# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHICAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| AUDI AG, a German Corporation and VOLKSWAGEN of AMERICA, INC., a New Jersey Corporation, | : Civil No. 2:04CV70665 |
|  | : |
| Plaintiffs, | : **DEFENDANT'S OPPOSITION TO AUDI'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | : |
|  | : |
| BOB D'AMATO, an individual d/b/a QUATTRO ENTHUSIASTS, an entity of unknown origin, | : Hon. Paul D. Borman |
|  | : |
| Defendant. | : |

## DEFENDANT'S OPPOSITON TO AUDI'S
## MOTION FOR SUMMARY JUDGMENT

Bob D'Amato and Quattro Enthusiasts (together, "Defendant") opposes Audi AG and Volkswagen of America, Inc. (together, "Audi") motion for summary judgment on all of Audi's claims in this lawsuit, *inter alia*, for trademark dilution under 15 U.S.C. §1125(c); trademark infringement under 15 U.S.C. §1114; false designation of origin 15 U.S.C. §1125(a); Anticyberpiracy Act (ACPA) 15 U.S.C. §1125(d); and common law trademark infringement under the Lanham Act because (1) issues of material fact exist as to Champion Motorsport ("Champion Audi") being Audi's *alter ego* racing arm in North America, and as to Audi's involvement with Champion Audi in giving permission to use and develop *audisport.com* into a commercial website; and (2) Audi's involvement today in maintaining and promoting *audisport.com* and linking to clothing bearing Audi Trademarks. This Court should deny Audi's motion for summary judgment as material issues of fact exist about the newly alleged common law mark AUDI SPORT its use, abandonment and/or it becoming a generic term for Audi racing.

On technical grounds, Mr. D'Amato requests dismissal with prejudice of this action in view of defects in Audi's Complaint as filed and upon which Audi's motion for summary judgment is based.  Without leave to amend or proper notice Audi now asserts four new marks added to the Complaint, specifically, AUDI STYLIZED, the alleged common law marks of AUDI SPORT NORTH AMERICA and AUDI SPORT ("Common Law Audi Trademarks"); and an alleged trade dress of a red parallelogram to the left of AUDI SPORT NORTH AMERICA ("Audi Trade Dress") in addition to the Audi Trademarks defined in the Complaint (AUDI®, AUDI FOUR RINGS® and QUATTRO®).  Plaintiffs' have added the Common Law Audi Trademarks and Audi Trade Dress by way of the Declaration [second] of Linda Scippione. Defendant put Audi on notice of the defects on August 10, 2004[1] and, in response, Audi on March 28, 2005 attempts to add new marks to the original Compliant by way of a biased Declaration of Audi's paralegal.  This Court should deny summary judgment and find the Declaration of Audi's paralegal has no probative value.   As a result, Audi's requested presumption of famous and distinctive should not be afforded and proven at trial for the Audi Trademarks; and certainly as to the Common Law Audi Trademarks and the Audi Trade dress. Such defects in the Complaint are dispositive and Plaintiffs' motion should be denied.

Defendant further requests denial of Audi's motion for summary judgment on Defendant's counterclaims because Audi has refused to answer Defendant's discovery requests. Mr. D'Amato already has made a sufficient showing that issues of fact exist for inconsistent usage of the Common Law Audi Trademarks ~ at least as to the cancelled mark AUDI SPORT, and alleged common law marks Audi Sport (two words), AudiSport (one word), and Audi Sport North America.  Discovery of issues of fact exist as to whether Audi's Trade Dress Audi

---

[1] *Def. Mot. To Dismiss.* at 6; *Cf.* Complaint at ¶¶9-11, 55.

Trademarks enjoy any secondary meaning; or if such trade dress is primarily nonfunctional. Discovery of factual issues of any usage of the Common Law Audi Trademarks from 1993 to present is material because it bears directly on the issues of abandonment, generic and any common law rights in the alleged marks.  Defendant cannot for the above-reasons and others stated in the Rule 56(f) Affidavit attached hereto-state facts essential to justify the Defendant's opposition to Audi's motion for summary judgment.

Likewise, this Court should deny Audi's motion for a preliminary injunction, imposition of statutory damages, attorney's fees and costs because Audi heretofore has refused to answer Defendant's discovery requests.   Audi's refusal to produce any discovery requested by Defendant has not permitted affidavits to be obtained, depositions to be taken or discovery to be had.   Defendant has a pending motion to compel and hereby reserves the right to supplement Defendant's response to this motion.  For the reasons set forth in the attached brief in support, filed concurrently herewith pursuant to LR 7.1(c), Defendant requests this Court deny Audi's motion for summary judgment, dismissal of this action, award all costs, expenses and attorney's fees, and or to make any such other order in the order of justice.

Dated this 22nd day of April, 2005

By: _____/s/Damian Wasserbauer_____
Damian G. Wasserbauer, Esq.
**INTELLECTUAL PROPERTY ADVISORS LLC**
PO Box 156
Canton, CT 06019
Tel.: (860) 966-0989; Fax: (860) 693-1674

Adam B. Strauss (P53319)
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304
Tel.: (248) 203-0764; Fax: (248) 203-0763

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above was mailed or electronically delivered on April 22, 2005 to all Plaintiff's and pro se parties of record, and filed with the Court by ECF for filing on April 22, 2005.

**The Plaintiffs by and through Counsel**

***<u>Via ECF email</u>***

Edward C. Cutlip, Esq.
Kerr, Russell & Weber, PLC
500 Woodward Avenue, Suite 2500
Detroit, Michigan 48226-5499

***<u>Via US email</u>***

Gregory D. Phillips, Esq.
Howard, Phillips & Andersen
560 E. 200 South, Suite 300
Salt Lake City, Utah 84102

/s/Damian Wasserbauer

_____

Damian G. Wasserbauer

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHICAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| AUDI AG, a German Corporation and VOLKSWAGEN of AMERICA, INC., a New Jersey Corporation, | : | Civil No. 2:04CV70665 |
| | : | |
| | : | |
| | : | |
| Plaintiffs, | : | **BRIEF IN OPPOSITION TO AUDI'S** |
| vs. | : | **MOTION FOR SUMMARY JUDGMENT** |
| | : | |
| BOB D'AMATO, an individual d/b/a | : | Hon. Paul D. Borman |
| QUATTRO ENTHUSIASTS, an entity of | : | |
| unknown origin, | : | |
| | : | |
| Defendant. | : | |

**BRIEF IN OPPOSITON TO AUDI'S
MOTION FOR SUMMARY JUDGMENT**

## BOB D'AMATO'S STATEMENT OF
## <u>UNDISPUTED ISSUES OF MATERIAL FACT</u>

1.      On May 17, 1993, Audi voluntarily cancelled the trademark AUDI SPORT. *See Exh.* 2.

2.      Mr. D'Amato registered the domain name *audisport.com* (herein "*audisport.com*") on February 11, 1999; eight months prior to the effective date of Nov. 29, 1999 of the Anti-Cyberpiracy Protection Act ("ACPA").   *See Exh.* 3; *Exh.* 1-*D'Amato Dep.* at 13.25- 14:07.

3.      Between April 18, 2002 and February 9, 2004, *audisport.com* contained content developed under the approval of Audi, by and through its alleged *alter ego* Champion Motorsport ("Champion Audi").  The timeline was 99 weeks from first contact to contract termination with approximately 12 weeks of links netting ZERO in sales.  *Exh.* 4.  Table 1 illustrates a chronology of important dates.

| Description | Actual Date | Portion of the Record |
|---|---|---|
| Date of domain Name Registration | **February 11, 1999** | *D'Amato Dep.* Exh. 8:25-10:02 |
| Date of First Web Page | **Nov. 30, 2001** | *Exh.* B, Decl. Jared Cherry |
| Date of Contact from Richard Cylc | **April 18, 2002** | *Exh.* 5. |
| Date of Contact by Audi | **December 19, 2003** | *Exh.* 4 |
| Removal of Audi Trademarks | **February 9, 2004** | *Exh.* 4 |
| Filing of this Lawsuit | **February 23, 2005** | *Exh.* 4 |

4.      On April 18, 2002, Mr. Richard Cylc, an Audi brand specialist at Champion Audi, Audi's racing arm, first contacted Mr. D'Amato by email through the website stating "please call me about your website I like it."  *See Exh.* 5; *D'Amato Dep.* at 18:20- 20:09.

5.      Mr. Cylc turned the development of *audisport.com* over to Mr. Devin Carlson, a Champion Audi Sales Manager; Mr. Carlson began creating a website by sending content, approving website templates, logo designs, goods and email services, and giving permission and assurances to use Audi Trademarks, stating:

> I already have a paypal setup….  I will send you a bunch of stuff on champion and other race team pics.  <u>You can post them without a problem – if for some reason there is an issue that comes up you will just let me know and I will tell them that I have worked with</u>

1

you in the past and I told you it was ok…. However, <u>if I had a suggestion it would be to flood your site with all the current most up to date info</u> and content on Audi racing R8's, etc. This is the kind of stuff the general public wants, and will keep word of mouth at high levels and keep people retuning to the site.

(emphasis added.)  *See Exhs.* 6, 18; *D'Amato Dep.* at 24:01-10, 25:11-26:04; 61:15-62:13; 77:06-09; 80:02-81:09; 83:18-84:03; 86:02-19; 137:13-130:07; 139:13-140:07; 155:01-08.

6.    Along the way, Mr. Carlson also developed the game plan for the selling of hats and shirts by *inter alia* approving page designs, the "audisport.com red logo", Audi pictures of not yet released car designs; and links for hats, shirts, email hosting ~ each with Paypal button to send payment via a link to a site controlled by Champion Audi. *See Exhs.* 7, 8; *D'Amato Dep.* at 82:03-83:04; 83:18-84:03; 86:02-86:19; 137:13-19; 139:13- 140:07; 145:11-146:11.

7.    On May 19, 2003, in an e-mail from Devin Carlson at <u>devinc@champion-motors.com</u> , Devin Carlson cancelled further development.  He offered Mr. D'Amato the chance of  "<u>purchasing that end of the business from us</u>, we have everything in place including a relationship with the merchandise distributor with the logo already digitized," because there were "<u>zero sales</u> and a couple of thousand in costs, "and he would "<u>let you know when the actual date will be so you can remove the link</u>."  (emphasis added.)  Mr. D'Amato declined to buy their business and declined to sell his website to them.  *See Exh.* 9; *D'Amato Dep.* at 84:23- 25; 88:04-89:03; 134:15-135:18; 135:19-136:04; 137:03-137:16.

8.    At no time did Mr. D'Amato traffic or offer to sell the domain name *audisport.com* to Champion Audi, Audi or other third parties.  *D'Amato Dep.* at 135:19-136:04; 137:03-07.

9.    On December 23, 2003, Mr. D'Amato contacted Mr. Carlson to let him know about the cease and desist letter.  Mr. Carlson acknowledged that [Bob Skal] had spoke to legal about selling [goods and services] on your website….  It's a [------] thing you haven't really done anything with the site to profit from…. I am sure that <u>Audi probably just wants their site</u>."  (emphasis added.)  *See Exh.* 10; *D'Amato Dep.* at 90:22-92:13.

10.     On February 9, 2004, Mr. D'Amato removed references to all approved page designs, all logos developed, and content posted having Audi Trademarks (AUDI, AUDI FOUR RINGS, and QUATTRO); as a result, on February 23, 2004, *audisport.com* appeared in a non-commercial way. *See Exh.* 11; *D'Amato Dep. at* 85:07- 86:06; 140:15-141:24.

11.     Overall, Defendant's website was transformed from a non-commercial informational website to Champion's site then back to a non-commercial informational website with Audi now supporting and maintaining *audisport.com*. *See Exh.* 12; *D'Amato Dep.* at 156:01-158:13.

12.     Through Melissa Grunnah, an Audi contractor, Bob D'Amato still receives permission from Audi today to post content.   For example, Melissa Grunnah of Audi (1) uses a logo (old) approved by Devin Carlson, to promote events at Connecticut Audi Dealers in the spring of 2004; (2) continues to send new racing information content to post on *audisport.com*; (3) recently sent content and links to post for goods of shirts and hats offered for sale at Champion Audi bearing the Audi Trademarks AUDI® and AUDI FOUR RINGS®. *See Exh.* 12 & 13; *D'Amato Dep.* at 122:14- 123:25.

13.     Linda Scipione has now filed two Declarations stating that the marks are famous and distinctive (¶6), but does not allege any use of AUDI SPORT.   In the first Declaration and the original complaint, Plaintiff states that Audi holds rights to AUDI®, QUARTTRO® and the AUDI RING LOGO®; in the second "holds valid and incontestable trademark registrations for the trademarks AUDI®, <u>AUDI STYLIZED®</u>, QUATTRO® and the AUDI RING LOGO®…. [Audi also] <u>hold[s] common law trademark rights in AUDI SPORT™</u>…. (<u>collectively … referred to hereafter as the "Audi Trademarks")</u>"  (*Id.* at ¶¶4 and 5 (emphasis added as to changes)).  Exhibit A of the declaration shows goods of shirts and hats bearing AUDI SPORT NORTH AMERICA and to the left, a red parallelogram. *See Exhs.* 14,; *Cf.* (*Exhs.* 22, 23).

3

14.     A comparison of the logos illustrates distinct differences between the logos of AUDI SPORT NORTH AMERICA with a left parallelogram (Exhs. 15 & 16) and the materially different AudiSport.com logo, as of Feb. 9, 2005 (Exh. 15), as placed on the website but not used for goods of hats and shirts.  *See Exh.* 15 and 16; *Cf.* (*Exhs.* 22, 23).

15.     Defendant reasonably believed he received permission and license from Audi, presently and through Audi's alleged *alter ego* Champion Audi  *See Cf.* (*Exh.* 5 and *Cylc Dec.* (¶4)); *Cf.* (Exhs. 6, 9, 10 and Exh. 14 *Carlson Dec.* (¶¶2,4,5)); and *D'Amato Dep.* at 53:16- 56:25; 85:07- 85:21; 90:01-90:09; 90:22-92:13; 93:01- 93:17; 124:01-124:11.

16.     A trademark search of TESS system finds no marks for Audi Sport North America, AudiSport or audisport.  Exh. 17.

17.     Network Solutions cleared Mr. D'Amato from allegations brought by Audi for filing false contact information in *audisport.com. Exh*. 19; *D'Amato Dep.* at 132:13-134:08.

18.     Audi, while professing that it has a licensing program to license its marks, really does not because requesting a license from such site does nothing and bounces the request back to the user. *Exh.* 20; *D'Amato Dep.* at 14:08-14.

19.     Mr. D'Amato has spent approximately $379,827.64 for the development costs of *audisport.com* directly working on the endeavor proposed by Champion Audi. *See Exh. 21.*

### BOB D'AMATO'S STATEMENT OF DISPUTED FACTS

1.     Disputed.  Audi's original Complaint only defines "Audi Trademarks" as AUDI, AUDI FOUR RINGS, and QUATTRO.  (Complaint ¶¶9-11.)  The Complaint completely fails to define and give notice of the newly complained of Audi logo's (parallelogram), AUDI STYLIZED, AUDI SPORT NORTH AMERICA and AUDI SPORT.  (Complaint ¶¶9-11 and 55.)  *See Exh.* 2, 3, 4 ,5; *D'Amato Depo.* at 148:24; 151:02; *Affidavit Rule 56(f).*

2.     Disputed. *See Exh*. 2, 3, 12, 13, 14, 15-17 and 22-23, *Affidavit Rule 56(f.)*

4

3.      Disputed.  *See Def. Fact Stmt.* ¶¶ 2,13-17; Exh. 2, 3, 12 -17 and 22-23.

4.      Disputed *See Exh.* 4; *Affidavit Rule 56(f).*

5.      Disputed. *See e.g. Def. Fact Stmt.* ¶¶ 5-7; *Affidavit Rule 56(f).*

6.      Disputed. *See Def. Fact Stmt.* ¶2; *Affidavit Rule 56(f).*

7.      *Cf. Def. Fact Stmt.* ¶2.

8.      Disputed.  *Verified Ans.* ¶60.

9.      Disputed.  *See Exh.* 19; *Def Fact Stmt.* ¶19; *D'Amato Depo.* at 54:11-20; 55:19-
21; 56:1- 56:01; *Affidavit Rule 56(f).*

10.      Disputed. *See Def Fact Stmt.* ¶¶4-7; *Affidavit Rule 56(f); D'Amato Depo.* at
54:15- 55:25.

11.      Disputed.  *See Def Fact Stmt.* ¶14; *Affidavit Rule 56(f).*

12.      Disputed.  *See Def Fact Stmt.* ¶¶5-16; *Affidavit Rule 56(f).*

13.      Disputed.  *See D'Amato Depo.* at 54:15- 56:01.

14.       Disputed.  *See Def Fact Stmt.* ¶¶4-7; *Affidavit Rule 56(f).*

15.      Disputed.  *See Def Fact Stmt.* ¶¶5,10; *Affidavit Rule 56(f).*

16.      Disputed.  *See Def Fact Stmt.* ¶6; *Exh. 15; Affidavit Rule 56(f) .*

17.      Disputed.  *See Def Fact Stmt.* ¶11; *Affidavit Rule 56(f).*

18.      Disputed.  *See Def Fact Stmt.* ¶¶5,6,10; *Affidavit Rule 56(f) .*

19.      Disputed.  *See Def Fact Stmt.* ¶13; *Affidavit Rule 56(f).*

Items 21, 22, 23 and 23 are in Dispute. *See Def Fact Stmt.* ¶¶5,10,13; *Affidavit Rule 56(f).*

24.   Disputed.Defendant knows Champion Audi can be a franchise. *Affidavit Rule 56(f).*

25.      Disputed.   *See Def Fact Stmt.* ¶¶5,6,7; *Affidavit Rule 56(f).*

26.      Disputed.  *See Def Fact Stmt.* ¶¶5,7; *Exh.* 21.

27.     Disputed.  *See Def Fact Stmt.* ¶¶5,6,7; *Affidavit Rule 56(f).*  The evidence shows links to a website controlled by Champion Audi were placed on *audisport.com* for any hats, shirts and the like.

28.     Disputed.  Any items bear the mark AUDI SPORT NORTH AMERICA.  *See Def Fact Stmt.* ¶¶13,14,15; *Affidavit Rule 56(f).*

29.     Disputed.  Champion Audi requested advertising be developed and Mr. D'Amato created a placeholder, under construction, page for advertising on *audisport.com.  See Def Fact Stmt.* ¶¶5,7,10,13; *Affidavit Rule 56(f).*

30.     Disputed.  *See Def Fact Stmt.* ¶¶5,7,10,13; *Affidavit Rule 56(f).*

31.     Disputed.  Defendant prudently displayed a disclaimer.  *Affidavit Rule 56(f).*

32.     Disputed. *Affidavit Rule 56(f).*

## INTRODUCTION AND OVERVIEW

This case is more about Audi's voluntarily canceling the registration to a mark AUDI SPORT on May 17, 1993, and trying now to recapture it.  Audi brings this reverse hijacking action under the ACPA and trademark law to have the domain name under the website *audisport.com* assigned to them.  Audi, of course, at the same time providescontent to the website *audisport.com* where it enjoys fantastic popularity and large "hit" rates from Audi racing enthusiasts.

Some evidence exists, and more is believed to exist, that Audi can obtain a domain name in other generic or country-code top level domains .org, .net and the like; however, Audi has refused discovery.  Discovery of Audi's use of AUDI SPORT at common law is extremely important for Defendant to know whether Audi, of course, allowed it to become generic, go abandoned, or failed to properly protect over the past ten years.  Defendant believes that he rightfully registered the domain name *audisport.com* during a time when Audi stopped using

6

Audi Sport, thereby allowing him to maintain his non-commercial, informational website under the domain name *audisport.com*.

## **ARGUMENT**

### **I.  AUDI'S LAWSUIT IS NOT VIABLE AS BEING UNTIMELY**
### **A.  Audi's Suit Is Barred or Otherwise Precluded by Statute of Limitations.**

In absence of unusual circumstances, a trademark suit will not be barred before the analogous statute has run but will be barred after the statutory time has run.  *Layton Pure Food Co. v. Church & Dwight,* 182 F. 35, 40 (8th Cir.1910). The analogous Michigan statute of limitations in this case is three years; and this standard also applies under the ACPA.  *Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc.*, 270 F.3d 298, 321 (6th Cir. 2001). Defendant has openly possessed the domain name *audisport.com* without any effort to conceal the same for at least 3 years without causing any dilution or otherwise infringing any rights of Plaintiffs. *Ford Motor Co. v. Catalanotte,* 342 F.3d 543 (6th Cir. 2003).  Mr. D'Amato timely raised a defense regarding the expiring of the applicable three-year statute of limitations.  *Verified Ans.* ¶81, (*3rd Aff. Defense*) at 8.

Mr. D'Amato's first registered *audisport.com* on Feb. 11, 1999 and posted a webpage on Nov. 30, 2001.  *Def. Stmt. Fact* at ¶¶2,3.  Champion Audi first contacted Defendant on April 18, 2002 more than 3 years after his registering *audisport.com*.  *Def. Stmt. Fact* at ¶¶3, 4; Table 1; and *Aff. Rule 56(f)*.  Audi filed this lawsuit on Feb. 23, 2004: 3 years after posting; 5 years after registration; and 10 years canceling AUDI SPORT. *Def. Stmt. Fact* at ¶1.  Audi, and its *alter ego* Champion Audi, clearly lacked diligence in light of Mr. D'Amato openly possessing *audisport.com* without (1) concealing it or (2) offering to sell it to anyone, including Audi or Champion Audi.  *Def. Fact Stmt* ¶8.  As such Defendant believes that the applicable statute of limitation has run and bars this action.

Moreover, Audi has submitted no evidence that AUDI SPORT is a <u>famous and</u>

7

distinctive mark or has been <u>use</u> to give rise to common law rights after Audi's voluntary cancellation on May 17, 1993. *Def. Stmt. Fact* at ¶1,13. *In re Gray Inc.*, 3 U.S.P.Q.2d 1558, 1560 (TTAB 1987) (affidavit of applicant's counsel expressing his belief that the mark has acquired secondary meaning accorded 'no probative value whatsoever' because, among other reasons, the statement is subject to bias). Accordingly, as a matter of law, all of Audi's claims for trademark infringement and cyber-squatting are not supported and the court should deny their motion for summary judgment as time barred.

**B.     Audi's Suit Is Precluded by Equitable Estoppel, Acquiescence And Laches.**

Mr. D'Amato timely raised the defense of equitable estoppel, acquiescence and or laches *Verified Ans. (4th Aff. Defense)* at 8. A "presumption of laches" holds that "an action is barred if not brought within the period of the [analogous State] statute of limitations and is alive if brought within the period." *Tandy Corp. v. Malone & Hyde, Inc.,* 769 F.2d 362, 365 (6th Cir. 1985), *cert denied,*476 U.S. 1158, 106 S.Ct. 2277 (1986); *Ford Motor Co. v. Lapertosa,* 126 F. Supp. 2d 463 (E.D. Mich 2000). To invoke the equitable doctrine of laches, a party must show: "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Herman Miller* at 320. With respect to the first requirement, a party's notice or lack of notice that its rights are being infringed is particularly relevant to determining whether that party lacked diligence in protecting its rights. *See id.* at 321.

Mr. D'Amato has produced sufficient evidence that Audi abandoned AUDI SPORT. Relevant evidence is that Audi voluntarily cancelled and, thereafter, failed to <u>use</u> AUDI SPORT at common law or as a domain name for more than three years after Feb. 11, 1999. *Def. Fact Stmt.* at ¶1,2. Plaintiff may have lacked diligence in monitoring the usage of AUDI SPORT after (a) May 17, 1993; (b) Feb. 11, 1999; (c) Nov. 30, 2001 (d) Apr. 18, 2002 (3 years, 2 months); and (e) February 23, 2004 (nearly 5 years) *Def. Stmt. Fact* at ¶3; Table 1; and *Aff. Rule 56(f).*

Second, Mr. D'Amato was being given assurances, as he developed for Champion Audi, that he had permission to use Audi Trademarks. Contracts and agreements were being formed consistently either orally, by actions, and/or by a stated written agreement to Mr. D'Amato, that he could reasonably rely upon, under (1) the actions and assurances from Champion Audi (*Def. Stmt. Fact* at ¶¶5, 6, 9, 12, 15); and (2) the actions and assurances to this day of Audi through Melissa Grunnah (*Def. Stmt. Fact* at ¶¶12, 15). Recently, Audi appears to be okay with maintaining *audisport.com* as a logo (Ex. 12 (*Def. Stmt. Fact* at ¶¶12)); and improving it to link to commercial sales of hats and shirts beginning April 1, 2005 (Ex. 13 (*Def. Stmt. Fact* at ¶¶15)). Audi actions only can be identified with acquiescence and lack of diligence. Defendant clearly is prejudiced by these actions; as he has relied on them. For this reason, Mr. D'Amato can shown material issues of fact now, and at trial, that he was prejudiced by Audi's failure to assert its rights before February 23, 2004. Accordingly, this court should deny Audi's motion for summary judgment under the equitable doctrines of estoppel, acquiescence or laches as each all of Audi's claims for trademark infringement and cyber-squatting are not supported.

## II. DEFENDANT DID NOT VIOLATE ANY OF THE FACTORS FOR CYBERPIRACY AUDI BENEFITS TODAY FROM DEFENDANT'S BONA FIDE NONCOMMERCIAL OR FAIR USE ON THE WEBSITE *audisport.com*.

It is only the challenged domain name and the plaintiff's mark that are to be compared. *Northern Light Technology, Inc. v. Northern Lights Club*, 236 F.3d 57, n. 14, 57 U.S.P.Q.2d 1277, n. 14 (1st Cir. 2001) ("As the district court noted, the 'likelihood of confusion' test of trademark infringement is 'more comprehensive' than the 'identical or confusingly similar' requirement of ACPA, as it requires considering factors beyond the facial similarity of the two marks."); *Hartog & Co. AS v. SWIX.com*, 136 F. Supp. 2d 531, 538, 63 U.S.P.Q.2d 1086 (E.D. Va. 2001); *Ford Motor Co. v. Catalanotte*, 342 F.3d 543 (6th Cir. 2003). Mr. D'Amato has produced sufficient evidence demonstrating that material issues of fact and Audi's motion for

summary judgment and it should be denied under the ACPA.[1]   To prevail under its ACPA claim

Audi must show: (1) that defendant has registered, trafficked in, or used a domain name

*audisport.com*; (2) which is identical to or confusingly similar to [or "dilutive of" a "famous"

mark] owned by plaintiffs; (3) the mark was distinctive [famous] at the time of Defendant's

registration of the domain name *audisport.com*; and (4) the defendant has committed the acts

with a bad intent to profit from Plaintiff's mark.[2]   The degree of similarity is one of identity,

near-identity; or dilution by tarnishment.  *Ford Motor Co. v. Lapaertosa*, 126 F. Supp. 2d 463

(E.D. Mich. 2000).

        No bad faith evidence exists under item (1) that Mr. D'Amato unlawfully registered

(*Def. Fact Stmt.* ¶2) or trafficked in (*Def. Fact Stmt.* ¶8) and Audi's summary judgment must be

denied on these grounds.  However, material issues of fact remain whether his initial (*Id.*) and

present usage by Audi's Melissa Grunnah (*Def. Fact Stmt.* ¶12) are non-commercial; and his

middle-term usage (*Def. Fact Stmt.* ¶¶3-10, 12) was by permission and/or acquiescence.  There

is a material issue of fact of whether Audi has established rights to the alleged common law

mark AUDI SPORT based on it being used presently as no evidence was supplied by

Declaration or discovery.  *In re Gray Inc. at* 1560; *Def. Fact Stmt.* ¶14; *Aff. Rule 56(f).*   As a

result, under the first three factors of §1125(d)(1)(B)(i) and (iii),[3] material issues of fact exist on

whether Mr. D'Amato's has rights in Audi Sport from Audi's lack of use; that he only had

---

[1] Rule 56, *Federal Rules Civil Procedure*, requires that the opponent to a summary judgment
motion have adequate time for discovery. Fed. R. Civ. P. 56(f); *Celotex Corp. v. Catrett,* 477
U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (in order to obtain more time for
discovery the defendant is required to submit an affidavit stating reasons why "the party cannot
... present by affidavit facts essential to justify the party's opposition.")  Defendant has submitted
an affidavit and thus has met the requirements for a continuance for further discovery under Fed.
R. Civ. P. 56(f).  *See Emmons v. McLaughlin,* 874 F.2d 351, 357 (6th Cir.1989).
[2] (brackets [] indicate differences between analysis involving famous marks)
[3] An issue of material fact exists as to whether Defendant's non-commercial activities was a
legitimate use of the domain name audisport.com and a good center of good intent similar to
factors commercial activities under the reasonable belief of Champion Audi.  4 *McCarthy on
Trademarks and Unfair Competition* § 25:78.

"links" and collected no payment; and that he has a *bona fide* belief from Audi's current supporting of his site *audisport.com*.[4]   *Def. Fact Stmt.* ¶¶2-12, 14-18.  Defendant presently has satisfied his good faith burden using a generic or abandoned in a normal non-commercial way to promote Audi Racing in North America.   Audi's summary judgment must be denied on these grounds.

Similarly, issues of material issue remain on items (2) and (3).  Under item (2) the material issue is whether *audisport.com* is identical to or confusingly similar to AUDI SPORT at the common law [or "dilutive of" a "famous" Audi Trademarks or Common Law Audi Trademarks]; and if AUDI SPORT is used and owned by Plaintiffs.  *Id.*   As to item (3) issues of material fact exist as to whether at common law AUDI SPORT (a) was distinctive [and famous] at the time Defendant's registered *audisport.com*; (b) is being used by Audi; or (c) is "famous" and "distinctive." Plaintiffs' offer no evidence of usage nor other evidence of probative value by Declaration or discovery; therefore, the presumption of use and "famous" and "distinctive" does not apply.  *Id.*

Under item (4) no evidence has been made of record that Mr. D'Amato has committed acts with a bad intent to profit from Plaintiff's mark.  Mr. D'Amato earned no profit. *Def. Fact Stmt.* ¶¶3, 19.   The relationship appears to be Mr. D'Amato and Champion Motors and Audi promoting the site *audisport.com*, populating it with racing content, using the logo (old) at Connecticut Dealers in June 2004 and, with Audi's permission, using links on *audisport.com* to sell AUDI® and AUDI FOUR RINGS® shirts and hats.  *See, e.g. Def. Fact Stmt.* ¶3, 4, 5, 12; *Aff. Rule 56(f).*  The above-identified factors benefit Mr. D'Amato such that material issues of fact exist about Audi's satisfying the first three ACPA factors under §1125(d)(1)(B)(i) - (iii).

---

[4] There remains a material issue of fact as to the "prior" use in connection with goods and services prior to this lawsuit being filed.  *Cf.* § 1125(d)(1)(B)(iii); *Sporty's Farm LLC v. Sportsmann's Market, Inc.,* 2002 F.3d 489 (2d Cir. 2000).

Under the <u>fourth</u> <u>factor</u> Defendants engages in any *bona fide* non-commercial or "fair use" of the mark Audi and/or Audi Sport.[5] 15 U.S.C. §1125(d)(1)(B)(iv); *Def. Fact Stmt.* ¶¶2, 10. Issues of material fact have been created because of Audi's expanded the complained of marks, *i.e.*, Audi Trademarks, Audi Trade Dress, and Common Law Audi Marks without further discovery. *Def. Fact Stmt.* ¶13. More issues are created in permissions being granted to Mr. D'Amato by Audi and Champion Audi. Ex. 4, *Def. Fact Stmt.* ¶5-12. A material concerning actual infringement on February 23, 2004 as *audisport.com* was drastically changed back to a non-commercial, informational website. *Def. Fact Stmt.* ¶3,10,11. There is an issue of fact as to the current involvement of Audi in continuing to promote and support *audisport.com. Def. Fact Stmt.* ¶12. The above-identified factors benefit Mr. D'Amato. This Court should deny Audi's motion for summary judgment because of the above-identified material issues of fact concerning *audisport.com* as a non-commercial site.

The <u>fifth</u> <u>factor</u> also favors Defendants. The issue is whether customers are actually diverted by and through the links on *audisport.com* to other than a part of the Audi organization, *e.g.* someone other than Audi or Audi's, alleged *alter ego* Champion Audi. Moreover, as zero profits have been made from past acts, and current activities, there is less to Audi's diversion theory as no money has been paid to Mr. D'Amato. 15 U.S.C. §1125(d)(1)(B)(v); *Exh.* 7, *Def. Fact Stmt.* ¶12. Issues of fact remain if Audi can demonstrate any indicia of bad faith under 1125(d)(1)(B)(v). This factor benefits Defendant's and Audi's motion should be denied.

The <u>ninth</u> <u>factor</u> is not shown at all under §1125(d)(1)(B)(ix). Bad faith cannot be presumed because Audi has (i) not produced discovery; (ii) not submitted any evidence with its motion for summary judgment; and (iii) the Declaration [second] of Linda Scipione should be

---

[5] The fourth factor is intended to balance the interest of trademark owners with the interests of those who would make lawful non-commercial or fair use of another's marks such as for news reporting, racing information, even if done for profit, would not alone satisfy the bad faith intent required. 4 *McCarthy* § 25:78, n. 38 (4th ed.).

given no weight. Moreover, Audi reliance on *Ford Motor Co. et al. v. Kevin Knuhtsen*, Case

No. DBIZ2002-0183 (WIPO July 15, 2002) is misplaced. *Ford* (WIPO) is inapposite because

Respondent defaulted and filed no response to *Ford's* allegations and a determination of bad

faith was entered by default. Mr. D'Amato has reasonable grounds to believe that his conduct

was lawful, focusing primarily upon the objective reasonableness and credibility of his endeavor

to provide Audi racing information. Defendant has not alleged ignorance or any willful

blindness but has worked directly with Audi and Champion Audi and sought out their

permission. *Def. Fact Stmt.* ¶¶15. *Harrods Ltd. V. Sixty Internet Domain Names*, 157 F. Supp.

2d 658 (E.D. Va. 2001), *aff'd in part, rev'd in part on other grounds*, 302 F. 3d 214 (4th Cir.

2002). Audi's motion should be denied because of material issues of fact in view of Audi and

Champion Audi's past and present assurances.

An issue of fact exists to whether Mr. D'Amato "knew" for purposes under

§1125(d)(1)(B)(ix) that the *audisport.com* or AudiSport (one word) or Audi Sport (two words)

was counterfeit as it depends on whether he had an awareness or a firm belief to that effect." 4

*McCarthy* n. 20 § 25:78. Mr. D'Amato formed a firm belief that his actions are lawful because

Audi is supplying the reasonable grounds now by: (1) provides racing content to *audisport.com*;

(2) using the logo (old) at Dealer events. There is an issue of material fact as to making out a

"reasonable belief" defense and this is the unusual case where the court could exercise it.

Moreover, there is a present issue of material fact if Mr. D'Amato has used

*audisport.com* in a *bona fide* non-commercial use under the "Safe Harbor" provisions of

§1125(c)(4)(B) and (C) under the "Savings Clause" of the ACPA §3008, of the overall Bill,

states:

> "Nothing in this Title shall affect any defense available to a defendant under the
> Trademark Act of 1946 including any defense under section 43(c)(4) of such act or
> relating to fair use) or a persons right of free speech or expression under the first
> amendment of the United States Constitution. (emphasis added.)

Issues of material fact exist because Defendant's Affirmative Defenses must be considered, for example, defenses of the common law mark AUDI SPORT being generic and abandoned; the defense of the Statute of Limitations; the equitable defenses of estoppel, acquiescence, laches. Mr. D'Amato's sole purpose for audisport.com was to establish a non-commercial website to report on Audi racing events in North America. As a result, there is no actionable ACPA violation under 15 U.S.C. §1125 (c)(4)(B) for Audi Trademarks by promoting racing events and in (C) for reporting Audi racing news and commentary. 15 U.S.C. §1125 (c)(4)(B) and (C).

### III.     Audi Fails To Carry its Burden to Establish Federal Or Common Law Trademark Infringement under 15 U.S.C. §1125(a).

At common law, ownership of goods and service marks is obtained by actual use. *Allard Enterprises v. Advanced Programming Resources, Inc.,* 249 F.3d 564, 571 (6th Cir.2001). Plaintiffs have submitted no evidence by discovery of counterfeit items let alone any undisputed evidence to establish federal and common law trademark infringement of an alleged common law mark, Audi Sport.[6]   Neither party to this case has, or has filed, a state or federal trademark registration for AUDI SPORT or AUDI SPORT NORTH AMERICA. *Def. Fact Stmt.* at ¶148:21-151:04; Exhibit 4. Audi's use after 1993 is inconsistent and, at best, Audisport has been abandoned or become generic. *Dep. Fact Stmt.* at ¶1;*D'Amato Dep.* 148:22-149:04; 150:16-151:04. The supporting evidence that Plaintiff needed to submit, but did not, and has not produced by discovery, would be directed to the five types of evidence considered by the Sixth

---

[6] *Therma-Scan, Inc. v. Thermoscan, Inc.,* 295 F.3d 623, 629 (6th Cir.2002) (citing *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.,* 109 F.3d 275, 280 (6th Cir.1997)). When analyzing these factors, the Court must evaluate the performance of the marks in the commercial context. *Homeowners, Homeowners Group, Inc. v. Home Marketing Specialists, Inc*., 931 F.2d 1100, 1106 (6th Cir. 1991)(quoting *Frisch's Restaurant, Inc. v. Shoney's Inc.,* 759 F.2d 1261, 1266 (6th Cir.1985)). The Sixth Circuit has cautioned, however, that the factors are simply a guide, not a mathematical formula to be rigidly applied by the Court. *Therma-Scan,* 295 F.3d at 630. Furthermore: Not all of these factors will be relevant in every case, and in the course of applying them, "[t]he ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way."

Circuit to ascertain whether secondary meaning has been attached to a trademark: (1) survey evidence; (2) the length and manner of use of the mark; (3) the nature and extent of advertising and promotion of the mark; (4) the volume of sales; and (5) instances of actual confusion. 15 U.S.C. § 1125(a); *see also* M.C.L.A. § 445.903;  *S. C. Johnson & Son, Inc. v. Johnson*, 266 F.2d 129 (6th Cir. 1959) *cert denied* 361 U.S. 820, 80 S.Ct. 65 (1959)(The owner of registered and common-law trade-marks "Johnson's" and "Johnson", a manufacturer of floor waxes sued a partnership which used name "Johnson" and "Johnson Products Company" on its cotton wet mops and brooms and the court found use of marks was not infringed and the use of name did not cause and was not likely to cause confusion or mistake or to deceive purchasers as to source of origin of goods.); *Cf. Midwest Guaranty Bank v. Guaranty Bank*, 270 F.Supp.2d 900 (E.D.Mich. 2003)(the Court held infringement of a trademark because plaintiff submitted actual evidence of use of a common law mark).  Under the present case, Audi has only submitted a biased declaration of Linda Scipione creating issues of fact.

**A.  <u>Audi Has Supplied No Tangible Evidence Of Actual Use</u>.**

In order to answer the ultimate question of "Whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way,"Audi has supplied no discovery of any of the eight *Thermo-Scan* factors. *Aff. Rule 56(f).*   Audi has not identified infringement by *audisport.com* between the Audi Trademarks, Common Law Audi Trademarks, and Audi Trade Dress.  *Def. Fact Stmt.* ¶1, 13; *Aff. Rule 56(f).*  There is a question of fact whether Audi's has any rights Audi Trade Dress and Common Law Audi Trademarks because no evidence of <u>usage</u> has been submitted for AudiSport (one word), Audi Sport (two words) and AUDI SPORT NORTH AMERICA.

15

**B.  Audi's Trademark Infringement Action Was Moot At The Time Of Filing.**

On February 23, 2004, at the time of filing this action, Defendant's website *audisport.com* did not have any unauthorized sale of goods and services nor use Audi's trademarks because the website was changed proactively on February 9, 2004.  (*Exh.* 11; *Def. Fact Stmt.* ¶3.  Plaintiffs' agree that this lawsuit is based on how *audisport.com* appeared in the format that Champion Audi wanted on December 19, 2003.  (*Complaint* ¶¶ 14, 17, *Exh.* B; *Cf. Dec. Jared Cherry, Exh.* B.)  .

**C.  Audi Submitted No Evidence Of Distinctiveness, Famous Or Secondary Meaning.**

Declarations asserting recognition of the mark as a source indicator are relevant in establishing acquired distinctiveness, whereby the value of the affidavits or declarations depends on the statements made therein and the identity of the Declarant.  *In re Petersen Mfg. Co.*, 2 U.S.P.Q.2d 2032 (TTAB 1987); *In re Paint Products Co.*, 8 U.S.P.Q.2d 1863, 1866 (TTAB 1988).  Proof of distinctiveness requires more than proof of the existence of a relatively small number of people who associate a mark with the applicant. *See also In re Gray Inc.*, at 1560 (affidavit of applicant's counsel expressing his belief that the mark has acquired secondary meaning accorded 'no probative value whatsoever' because, among other reasons, the statement is subject to bias); and does not comply with Federal Rule of Civil Procedure 26(b)(2)(B).  *Def. Fact Stmt. ¶13.*  Audi' counsel, through their paralegal, is claiming distinctiveness by flatly stating, "Audi Trademarks are famous and distinctive trademarks." (*Id.* at ¶6.)   As a result, by law, this Court should deny Audi's infringement and unfair competition claims.

**IV.    Audi Fails To Establish False Designation of Origin
         under Federal and Common Law 15 U.S.C.A. §1114.**

Section 1114(1)(a) and (1)(b) bars unauthorized use of a mark in commerce ... in connection with the sale, offering for sale, distribution, or advertising of any goods or *services* [if] ... such use is likely to cause confusion... (b) reproduce, counterfeit, copy, or colorably

imitate *a registered mark....*" 15 U.S.C. § 1114(1)(a) and (1)(b)(emphasis added).  No evidence

of use of the common law trademark AUDI SPORT has been submitted or discovered;

Defendant's use was merely via links supplied to him and posted on *audisport.com*.[7]  *Def Fact*

*Stmt.* ¶¶1-10, 13, 14; *Aff. Rule 56(f)*.  At common law, ownership of service marks is obtained by

actual use.   Neither party to this case has filed a state or federal trademark registration for AUDI

SPORT or AUDI SPORT NORTH AMERICA.   *Def Fact Stmt.* ¶14.  As a result, Audi cannot

establish false designation of origin or counterfeit goods under 15 U.S.C. § 1114, by Defendant's

use in commerce by *audisport.com* under 15 U.S.C. § 1114(1)(a) and (b) or as an innocent

infringer under 15 U.S.C. § 1114(2)(A).

## V.    AUDI FAILS TO ESTABLISH TRADEMARK DILUTION BY THE DOMAIN NAME *AUDISPORT.COM* UNDER 15 U.S.C.A. §1125(C).

Under 15 U.S.C. §1125 (c)(1) Audi must establish that it is "the owner of the famous

mark" AUDI SPORT (15 U.S.C. §1125 (c)(1)).  Audi may not seek possession of any offending

domain name through a trademark-dilution claim ~ mere reservation is not enough.   15 U.S.C.A

§1125(c); *Porsche Cars North America, Inc. v. Porsche.Net*, 302 F.3d 248, 64 U.S.P.Q.2d 1248

(4th Cir. 2002).  AudiSport has not been registered.  *See Def Fact Stmt.* ¶¶1, 3, 6 10, 12, 13, 14;

*Aff. Rule 56(f)*.  Audi has not offered any evidence of any trademark rights in the combination of

Audi and Sport as a distinctive and famous mark in particular the distinctive and famous aspects

to the mark AUDI SPORT according to Defendant's Interrogatory 3. §1125(c)(A)-(G). This

Court cannot presume that Audi meet the burden by a biased declaration; such declarations by

law cannot support this motion for summary judgment and issues of fact remain for trial.  Audi's

---

[7] *Phillips v. Hudnut et al.*, 49 App. D.C. 247, 263 F. 643 (D.C. 1920). Trademarks are not dependent on statutory enactment, but arise out of common law from prior exclusive appropriation and use. Registration is not controlling in a suit involving common law rights to a registered mark or in a suit for unfair competition involving its use. *United States Ozone Co. et al. v. United States Ozone Co. of America*, 62 F.2d 881 (7th Cir. 1932).

motion for summary judgment should be denied on this ground for its claims of dilution, federal and common law trademark infringement, dilution, false designation of origin.

Mr. D'Amato has not registered the *audisport.com* a domain name for the *purpose* of ransoming it back to the legitimate owner. *Panavision Int'l L.P. v. Toeppen,* 141 F.3d 1316, 46 U.S.P.Q.2d 1511 (9th Cir. 1998). The famous mark AUDI SPORT cannot be presumed and no probative evidence has been submitted. *See Def Fact Stmt.* ¶¶10-13; *Aff. Rule 56(f).* Mr. D'Amato's sole purpose for audisport.com was to establish a non-commercial website to report on Audi racing events in North America. As a result, there is no actionable trademark dilution under 15 U.S.C. §1125 (c)(4)(B) for Audi Trademarks by promoting racing events and in (C) for reporting Audi racing news and commentary. 15 U.S.C. §1125 (c)(4)(B) and (C).

## VI.   DEFENDANT DID NOT USE CONFUSINGLY SIMILAR GOODS OR SERVICES OR DOMAIN NAME UNDER 15 U.S.C. §1125 (C)

Audi at *audi.com* under this motion alleges *audisport.com* displayed images of goods bearing AUDI SPORT NORTH AMERICA. The website, *audisport.com* only linked to a server controlled by Champion and images of goods bore the markings of AudiSport. *See Def Fact Stmt.* ¶¶6 *and* 3-10, 12, 13, 14; *Aff. Rule 56(f).* Weighing the eight *Therma-Scan* factors:

**(1)** Defendant does not have discovery from Audi on usage of the Common Law Audi Trademarks, and the strength of the mark, secondary meaning cannot be presumed, and this court's findings only relate to the Audi Trademarks listed in the Complaint. *See Def Fact Stmt.* ¶¶12, 13, 14, 16; *Aff. Rule 56(f).* Defendant does not have discovery from Audi on usage and "famous" and "distinctiveness" and this court's findings only relate to the Audi Trademarks listed in the Complaint. *Def Fact Stmt.* ¶¶13; *Aff. Rule 56(f).* This factor is in Defendant's favor.

**(2)** There were no goods on Defendant's site, only links, so the comparison under relatedness cannot be made. *Def. Fact Stmt.* ¶¶5, 6, 12, 13, 14. Audi presently has not identified the exact nature of the counterfeits and what marks are being complained of. *Aff. Rule 56(f).* Defendants

18

analysis shows major distinctions in the variations between the common law marks of
*audisport.com* and AUDI SPORT NORTH AMERICA, and the trade dress parallelogram. *Def
Fact Stmt.* ¶¶13, 14,15.  No evidence of palming off has been presented. *Aff. Rule 56(f).*

**(3)** No confusingly similar or actual evidence has been submitted.  Similarly, no supporting
evidence of secondary meaning, famous, distinctiveness or use of the Audi Trademarks, Audi
Trade Dress, or Common Law Trademarks has been submitted.  The Declaration of Linda
Scipione, by law, is insufficient to provide such evidence and Audi's presumptions thereof. *See
Def Fact Stmt.* ¶¶12, 13, 14, 16; *Aff. Rule 56(f).*  Factor in Defendant's favor.

**(4)** There is no actual confusion as Audi continues provide content to *audisport.com* in part to
maintain the high hit rates; Audi probably just wants their site.  *Exh. 24; Def. Fact. Stmt.* ¶1,3-
13, 15, 19; *Aff. Rule 56(f).*   This factor is in Defendant's favor.

**(5)** Defendant does no use the same or similar marketing channels only provides links and not on
his server. *Def. Fact. Stmt.* ¶1,3-13, 15, 19; *Aff. Rule 56(f).*  This factor is in Defendant's favor.

**(6)**  Defendant provides a non-commercial website providing information to enthusiasts about
Audi racing events, which are the customers . *Def. Fact. Stmt.* ¶1,3-13,15,19;*Aff.Rule 56(f).*

**(7)** Audi merely wants the website and is willing to hijack Mr. D'Amato's *audisport.com*. *Def.
Fact. Stmt.* ¶1,3-13, 15, 19; *Aff. Rule 56(f).*   This factor weights heavily in favor of Defendant.

**(8)** Defendant has scaled back his website as of February 23, 2004 to an informational, non-
commercial website.  *Def. Fact. Stmt.* ¶10.  This factor weights in favor of Defendant.

Finally, *Audisport.com* from the first day use of a disclaimer and it is a significant factor in his
favor. Additionally, Audi and Champion Audi that are selling goods with the Audi Trademarks
through links on *audisport.com*. *Def. Fact. Stmt.* ¶8, 12.  Weighing the factors in view of the
alleged common law mark of AUDI SPORT factors (1) through (8) weigh substantially in Mr.
D'Amato's favor. As a result, Audi's motion for summary judgment should be denied.

## VII.    AUDI IS NOT ENTITLED TO ENTRY OF AN AWARD OF STATUTORY DAMAGES, ATTORNEY'S FEES, AND A PERMANENT INJUNCTION

This Court should not allow any statutory damages as there is no intentional infringement and Audi's and its agents are coming to this Court with unclean hands.   Defendant's have disclosed zero profits, have worked at a loss of $379,827.24, had a reasonable belief that its actions were under license and authorization, in developing and maintaining *audisport.com* for Audi.  *Def. Fact. Stmt.* ¶19.  There is an issue of fact of whether Audi is entitled to significant statutory damages because it continues to send content and support.  *Def. Fact. Stmt.* ¶12.  Audi is not entitled to recover its attorney's fees and costs Defendant is, for this motion and for Plaintiffs' discovery abuses, *e.g.* the recent submission of the misleading Declarations of Cylc and Carlson, under. 28 U.S.C. §1927.   It also is indisputable that Defendant registered the domain name *audisport.com* on February 11, 1999; eight months prior to the effective date (Nov. 29, 1999) of the ACPA.  As a matter of law, injunctive relief and damages are not attributable to Defendant's actions for registering the domain name *audisport.com*.  Defendant could not violate by registration of *audisport.com* under 15 U.S.C. 1125(c) as it is applied prospective of registration.  *Ford Motor Co. v. Catalanotte*, 342 F.3d 543 (6th Cir. 2003).

## CONCLUSION

Based on the foregoing, the Court should deny Audi's motion for summary judgment on all of its claims against Defendant in this action, allow Defendant to take discovery and bring appropriate motion on his counterclaims.

Dated this 22[th] day of April, 2005          By: _/s/Damian Wasserbauer_____
                                                              Damian G. Wasserbauer, Esq.
                                                              **INTELLECTUAL PROPERTY ADVISORS LLC**
                                                              PO Box 156
                                                              Canton, CT 06019
                                                              Tel.: (860) 966-0989; Fax: (860) 693-1674

                                                              Adam B. Strauss (P53319)
                                                              **DYKEMA GOSSETT PLLC**
                                                              39577 Woodward Avenue, Suite 300

Bloomfield Hills, MI 48304
Tel.: (248) 203-0764
Fax: (248) 203-0763

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above Brief in Support was mailed or electronically delivered on April 22, 2005 to all Plaintiff's and pro se parties of record, and filed with the Court by ECF for filing on April 22, 2005.

**The Plaintiffs by and through Counsel**

*Via ECF email*

Edward C. Cutlip, Esq.
Kerr, Russell & Weber, PLC
500 Woodward Avenue, Suite 2500
Detroit, Michigan 48226-5499

*<u>Via First Class Mail</u>*

Gregory D. Phillips, Esq.
Howard, Phillips & Andersen
560 E. 200 South, Suite 300
Salt Lake City, Utah 84102

By: _/s/Damian Wasserbauer_____

_____