# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHICAN
# SOUTHERN DIVISION

| | |
|---|---|
| AUDI AG, a German Corporation and VOLKSWAGEN of AMERICA, INC., a New Jersey Corporation, | : : Civil No. 2:04CV70665 : : |
| Plaintiffs, vs. | : SUPPLEMENTAL BRIEF : IN OPPOSITION TO AUDI'S : MOTION FOR SUMMARY JUDGEMENT |
| BOB D'AMATO, an individual d/b/a QUATTRO ENTHUSIASTS, an entity of unknown origin, | : Hon. Paul D. Borman : : |
| Defendant. | : : |

Adam B. Strauss (P53319)
**DYKEMA GOSSETT PLLC**
39577 Woodward Avenue, Suite 300
Bloomfield Hills, MI 48304
Tel.: (248) 203-0764
Fax: (248) 203-0763


Damian G. Wasserbauer, Esq.
**INTELLECTUAL PROPERTY ADVISORS LLC**
PO Box 156
Canton, CT 06019
Tel.: (860) 966-0989
Fax: (860) 693-1674

## SUPPLEMENTAL BRIEF IN OPPOSITION TO AUDI'S MOTION FOR SUMMARY JUDGEMENT

CONTROLLING AUTHORITY

*Bird v. Parsons*, 289 F. 3D 865, 877 (6th Cir. 2002)

*Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944)

*Overstreet v. Lexington-Fayette Urban Country Gov't*, 305 f.3d 566, 578 (6th Cir. 2002)

*Taubman Co. v. Webfeats*, 319 F.3d 770, 65 U.S.P.Q.2d (BNA) 1834, 54 Fed. R. Serv. 3d 1026, 2003 FED App. 0043P (6th Cir. 2003)

U.S. Const. amend. I.

TABLE OF CONTENTS

CONTROLLING AUTHORITY……………………………………………………….i

TABLE OF CONTENTS……………………………………………………………ii

TABLE OF AUTHORITIES…………………………………………………………..iii

INTRODUCTION…………………………………………………………………...1

SUPPLEMENTAL STATEMENT OF FACT………………………………………1

ARGUMENT……………………………………………………………………...…2

1.   Standards of Law………………………………………………………...2

2.   D'Amato's Email Evidence of Permission Is Legally Binding…………………..3

3.   No Infringing Use of Audi Trademarks under 15 U.S.C. §1114 Existed On the Website When The Complaint Was Filed; Permission Was Granted For Posted News/Model Content …………………………………………………….5

4.   Use of *audisport.com* and/or Hyperlinks Is Not Trademark and Trade Dress Dilution under 15 U.S.C. §1125(a) ………………………………………….6

5.   No Violation under the ACPA Due to Permission and the Safe Harbor under §1125(c)(4)(B) and (C). ……………………………………………...8

6.   Use of *audisport.com* and/or Hyperlinks Is Not False Designation under 15 U.S.C. §1125(d) …………………………………….……………..8

7.   Statute of Limitations…………………………………………………………...9

8.   Damages and Attorney's Fees…………………………………………...10

CONCLUSION……………………………………………………………...…10

TABLE OF AUTHORITIES

U.S. Const. amend. I. …………………………………………………………………1

**Cases**

*Bird v. Parsons*, 289 F. 3D 865, 877 (6th Cir. 2002)……………………………………3

*Bosley Med. Inst. Inc., v. Bosley Med. Group. S.C.*, 403 F. 3d 672, 678 (9th Cir. 2005)..6

*Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)……………………7

*Detroit Free Press v. Ashcroft*, 303 F.3d 681, 710 (6th Cir. 2002)………………………7

*Drake Publishers, Inc.*, 811 F.2d 26, 1 U.S.P.Q.2d 1753 (1st Cir. 1987), *cert. denied and appeal dismissed*, 483 U.S. 1013, 97 L. Ed. 2d 753, 107 S. Ct. 3254 (1987) ……………1

*Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944)……..…….10

*Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 623-24 (6th Cir. 1996), *cert. denied*, 519 U.S. 1093, 117 S.Ct. 770 (1997)……………………………….…………6,7

*Ledbetter v. Thacker,* 2003 WL 22976338 (Mich.App.,2003)……………………..……3

*L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 1 U.S.P.Q.2d 1753 (1st Cir. 1987), *cert. denied and appeal dismissed*, 483 U.S. 1013, 97 L. Ed. 2d 753, 107 S. Ct. 3254 (1987)………………………………………………………………………….…..2

*Overstreet v. Lexington-Fayette Urban Country Gov't*, 305 f.3d 566, 578 (6th Cir. 2002).3

*Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002)………….…………3

*Taubman Co. v. Webfeats*, 319 F.3d 770, 65 U.S.P.Q.2d (BNA) 1834, 54 Fed. R. Serv. 3d 1026, 2003 FED App. 0043P (6th Cir. 2003)…………………………………………2,3,6

*Ticketmaster Corp v. Tickets.com, Inc.*, 2000 WL 18887522 at *3, *5 (C.D. Cal. 2000), *aff'd* 2001 WL 51509 (9th Cir. 2001)……………………………………..…………6

**Statutes**

MCLS § 450.831 *et. seq.* ……………………………………………………...…………..3,8

Conn. Gen. Stat. § 1-266 *et. seq.* ……………………………………………….…………3,8

15 U.S.C. §1114 …………………………………………………………………………..5

15 U.S.C. §1125(a) …..……………..………………………………………………….….6

15 U.S.C. §1125(c) …………………………………………………………………….8

15 U.S.C. §1125(d) …………………………………………………………………….8

INTRODUCTION

On June 30, 2005, in the context of this case, Judge Paul D. Borman requested briefing of issues presented explicit permission and license by Audi AG in content provided to Mr. D'Amato to use Audi Trademarks and trade dress of Audi automobiles on his webpages at *audisport.com*.

SUPPLEMENTAL STATEMENT OF FACTS

1.      On June 4, 1999, and on April 4, 2000, Mr. D'Amato posted content to webpages that collectively make up the website *audisport.com* ("Website").  *Decl. D'Amato* ¶¶2-3.

2.      On January 29, 2004, Mr. D'Amato posted a changed the Website to create a non-commercial site providing Audi racing news and information and also featured a new *audisport.com* logo that used no Audi Trademarks.  *Decl. D'Amato* ¶¶4-6.

3.      As to content in the "Model" drop down menu, Devin Carlson was authorized by Audi AG to send content that included Audi Trademarks and trade dress of Audi Automobiles to post on the Website.  The model marketing and sales publications bore various legends and permissions from Audi AG including the legend "FOR IMMEDIATE RELEASE" and "Text and Pictures Courtesy of Audi AG," or were transmitted with that understanding from Jan. 23, 2003.  *Decl. D'Amato* ¶¶7-8, 9-17.

4.      Devin Carlson actions are consistent with him marketing and selling new Authorized Products for Audi AG under Audi's Standard Dealer Provisions, Article 4:

> "Dealer will use Authorized Trademarks only in connection with the promotion and sale of new Authorized Products and customer service for Authorized Products pursuant to this Agreement, and only in the manner that and for the purposes Audi specifies" *Pl. Br. Mot. Sum. J.* at Exh. 3.

*Decl. D'Amato* ¶¶12-15, 23.

5.      As to content in the "News" drop down menu, Devin Carlson and Melissa Grunnah were authorized by Audi AG to send content that included Audi Trademarks and trade dress of Audi Automobiles to post on the Website. Audi press releases and publications bore various legends and permissions from Audi AG including the legend "FOR IMMEDIATE RELEASE," "Text and Pictures Courtesy of Audi AG," or were transmitted with that understanding from Spring 2003. *Decl. D'Amato* ¶¶7-8, 18-22.

6.      On February 23, 2004, this action was filed by Plaintiffs based on a website "when Audi first contacted Defendants [on December 19, 2003]". Complaint ¶¶14, 17 Exh. B. At the time of filing this lawsuit, all hyperlinks to goods and services complained by Audi had been removed. Exhibit C; *Decl. D'Amato* ¶¶4-6, 16, 33-36.

ARGUMENT

**1. <u>Standards of Law</u>**

Trademark infringement under the federal Lanham Act can occur if a domain name similar to a trademark is used <u>without permission in a commercial sense</u> of any goods or services in a context that is likely to cause confusion, mistake or deception with a previously used mark. Commercial use of a domain name can also trigger the anti-dilution provisions of the Lanham Act. Plaintiff must first demonstrate that Mr. D'Amato's use is commercial and therefore within the jurisdiction of the Lanham Act, worthy of lesser First Amendment protections. *Taubman Co. v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003); *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26, 1 U.S.P.Q.2d 1753 (1st Cir. 1987), *cert. denied and appeal dismissed*, 483 U.S. 1013, 97 L. Ed. 2d 753, 107 S. Ct. 3254 (1987)(If the anti-dilution statute were construed as permitting a trademark owner to enjoin the use of his mark in a noncommercial context found to be offensive, then a corporation could shield itself from among other things criticism by forbidding the use of its name in commentaries critical of its

2

conduct). Moreover, the only important question is whether there is a likelihood of confusion between the parties goods and services. *Bird v. Parsons*, 289 F.3d 865, 877 (6th Cir. 2002); *Taubman* at 776; *Playboy Enterprises, Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002). In this context, Audi is in the business of the goods and services in the sale and maintenance of cars. Mr. D'Amato's Website is an informational service providing Audi racing information and posting his own pictures of Audi racing events.

The trademark issues raised in the Complaint will be examined in light of the permissions that existed between Audi AG, from various persons, and in the context of the Website operated by Mr. D'Amato.

### 2. **D'Amato's Email Evidence of Permission Is Legally Binding**

The Uniform Electronic Transactions Act (UETA) is designed to establish the legal equivalence of electronic records and signatures with paper writings and manually-signed signatures, removing barriers to electronic commerce. MCLS § 450.831 *et. seq;* Conn. Gen. Stat. § 1-266 *et. seq.* Under the Michigan UETA, Section 450.835 provides,

> (1) This act does not require a record or signature to be created, generated, sent, communicated, received, stored, or otherwise processed or used by electronic means or in electronic form.
>
> (2) This act applies only to transactions between parties each of which has agreed to conduct transactions by electronic means. Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct.

*Ledbetter v. Thacker,* 2003 WL 22976338 (Mich.App.,2003)(the court found that no ambiguity in the email documents at issue held the trial court correctly determined both that a contract was formed and email acceptance).

Evidence exists that legally binding agreements, permission and/or contracts are being be formed each time Devin Carlson or Melissa Grunnah offers content electronically to

3

Mr. D'Amato bearing Audi Trademarks contained therein and trade dress of Audi automobiles (any images that accompany the content) and he accepts and posts on *audisport.com*. The parties have an agreement to conduct these transactions by email (electronic means). Explicit permission is given by Audi AG's statements in the content transmitted electronically such as "Text and Photos provided courtesy of Audi AG," "For Immediate Release" and the conduct of Permission also is explicitly given through Devin Carlson's Jan. 23, 2003 email. *Decl. D'Amato at Exhs. F and G.* More recently, by Melissa Grunnah providing content to Mr. D'Amato with links to Champion Audi who is selling goods (shirts, hats, etc.) bearing Audi Trademarks. *Id. at Exh. J.*

Devin Carlson's statements and continued conduct are intended to create a contract or agreement between Audi AG and Mr. D'Amato through his role as a Sales Manager for Audi Automobiles.[1] Melissa Grunnah's emails and continued conduct are intended to create a contract between Audi AG and Mr. D'Amato to post content containing Audi Trademarks and the trade dress of Audi automobiles through her role and function as Audi Press Officer. It is evident that Devin Carlson also using is racing sites to get sales for his goods and services by requesting Mr. D'Amato to post hyperlinks on *audisport.com* to the *audisportline.com*; or more recently, by Melissa Grunnah providing content to Mr. D'Amato *with links* to Champion Audi who is selling goods (shirts, hats, etc.) bearing Audi Trademarks.

3. **No Infringing Use of Audi Trademarks under 15 U.S.C. §1114 Existed On the Website When The Complaint Was Filed; Permission Was Granted For Posted <u>News/Model Content</u>**

---

[1] Evidently is a furtherance his using all avenues available to him to generate sales of Audi automobiles (Authorized Products): from his lot at Champion Audi, from the Internet, and from racing events.

Mr. D'Amato's website and logo was changed significantly on January 29, 2004 before Plaintiffs filed this action. *Supp. Stmt. Fact* ¶2, *Decl. D'Amato* ¶¶4-5; *Exh. C and D;.* Defendant's maintains that his site became non-commercial. An examination of his claim indicates that the word Audi is used nominally in the Website. *Exh. 2 ~ Decl. D'Amato* ¶5, *Exh. C*. Mr. D'Amato also changed his logo to not include Audi Trademarks and trade dress of Audi automobiles. *Exh. 2 ~ Decl. D'Amato* ¶6.

Nominal use of Audi Trademarks and trade dress of Audi automobiles also appears in the "content" found under the "News/Models" drop down menu, which content was offered for posting to *audisport.com* repeatedly by emails from Devin Carlson and Melissa Grunnah. *Supp. Stmt. Fact. 3-5; See Exh. 2 Decl. D'Amato* ¶¶4-23 *at Exh. F*. The actions of Devin Carlson and Melissa Grunnah are within the permissions granted by Audi AG in the content. Moreover, the actions of Devin Carlson under the Audi Dealership Agreement, Article 4.

Mr. D'Amato's posting of such content of models of Audi brand cars is not inconsistent with the non-commercial nature of his informational website because these are Audi brand cars that can and are raced. This is not likely to confuse customers wanting to purchase and Audi automobile. Mr. D'Amato includes disclaimers and hyperlinks to Audi AG on his Welcome page for any misdirected traffic to his site. *Decl. D'Amato* ¶5. Mr. D'Amato also includes hyperlinks under "Audi Related Links" and explicit reference to Champion Audi for any customer desiring to purchase an Audi automobile. *Id.* Finally, Mr. D'Amato also includes hyperlinks under "Racing Related Links" and explicit reference to sites of Champion Racing and Randy Pobst for any person desiring to review the official Audi racing team site. *Id.*

5

Moreover, the expressions of Audi Trademarks and trade dress of Audi automobiles found under the "News/Models" drop down menu are not in connection with Mr. D'Amato's the sale or advertising of any goods and services on the non-commercial Website.  As a result, such expressions of Audi Trademarks and trade dress of Audi automobiles are not likely to cause confusion, and are outside the jurisdiction of the Lanham Act and is necessarily protected by the First Amendment. *Taubman* 319 F.3d at 774-775.  Moreover, the Website from its inception always maintained a disclaimer indicating that it was not affiliated with Audi AG and Audi USA.  *Decl. D'Amato* ¶¶2-4, 26; *Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 625 (6th Cir. 1996)(disclaimer informative holding no likelihood of confusion partly on this basis).

4. **Use of *audisport.com* and/or Hyperlinks Is Not Trademark and Trade Dress Dilution under 15 U.S.C. §1125(a).**

It is uncontroverted that Defendant did not use Audi Trademarks and trade dress of Audi automobiles in a false way.  It is uncontroverted that Defendant does not use the name Quattro Enthusiasts in commerce as a business name.  Defendant has not advertised; Defendant only has sponsor hyperlinks the site of Champion Audi and a website of Audi driver Randy Pobst. *Holiday Inns* 86 F.3d at 624.  It is uncontroverted that the Website merely had hyperlinks to goods (hats and shirts) and email hosting services offered by Champion Audi, which nonetheless were removed on January 29, 2004 prior to this action being filed.  Hyperlinks can create no liability for Defendant. *Taubman* 319 F.3d at 775-776; *Bosley Med. Inst. Inc., v. Bosley Med. Group. S.C.*, 403 F. 3d 672, 678 (9th Cir. 2005)(provision of a link from original site to second site did not transform original noncommercial site to a commercial use); *Ticketmaster Corp v. Tickets.com, Inc.*, 2000 WL 18887522 at *3, *5 (C.D. Cal. 2000), *aff'd* 2001 WL 51509 (9th Cir. 2001)(Link did not

6

support plaintiffs Lanham Act claims for passing off, misleading customers (likelihood of confusion), reverse palming off, false advertising). As a result, Defendant has not used counterfeits of goods or services bearing Audi Trademarks and trade dress, either knowingly or intentionally (Complaint ¶40-41), at the time this action was filed.

Because Mr. D'Amato is not using the Audi Trademarks to peddle competing goods, and because any damages would be economic in nature and fully compensable monetarily, the potential for harm to Audi is remote to issue the injunction. *Overstreet v. Lexington-Fayette Urban Country Gov't,* 305 F.3d 566, 578 (6th Cir. 2002) citing *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). It is hard to imaging any dilution applying to the facts of this case because there is no tarnishing or bluring of the Audi Trademarks from the non-commercial use on the Website, or permitted use on the Website by Audi AG. First, all of the content comes from Audi AG, from its marketing, sales and press agents. Second, content is posted unaltered and includes legends and permissions. Third, there are no competing goods and services. In fact, due to Free Speech concerns present, the potential for harm to Mr. D'Amato is more likely, and that the public would be negatively impacted should an injunction issue. *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 710 (6th Cir. 2002); *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998)(the loss of constitutional rights for even a minimal amount of time constitutes irreparable harm).

Defendant has never promoted *audisport.com* and has engaged in minimal advertisement as set forth in the Sponsor section, which remains under construction. The Sponsor section currently has courtesy links, at no cost, to Champion Racing of Champion Motors ("Champion Audi") and the driver, Randy Pobst the race car driver on the Audi AG/Champion Racing Team. He has not profited from anything on the site including

7

advertising and therefore, Defendant's use of Audisport in a domain name does not cause confusion and is not a violation of the Lanham Act and his result is supported by decisions in the Sixth Circuit. *Holiday Inns* at 623-24 (Defendant engaged in minimal advertising and <u>never</u> intentionally promoted a vanity number 1-800-HOLIDAY (where the O was a Zero) to create confusion so as to infringe any of Holiday Inns's marks.).

5. **No Violation under the ACPA Due to Permission and the Safe Harbor under §1125(c)(4)(B) and (C).**

Arguably, more occurrences of the word Audi appear in the News/Models menu respective of (1) news and racing related articles provided by Melissa Grunnah, Audi AG's Press Officer; and (2) press releases, articles and Audi marketing materials provided by Devin Carlson, Audi Brand Specialist, Sales Manager. However, explicit permission to use and post such content cannot be deemed bad faith cybersquatting. 15 U.S.C. §1125(c). Moreover, No actionable violation occurred here under 15 U.S.C. §1125(c)(4)(B) in Mr. D'Amato's use of Audi Trademarks by promoting racing events or under §1125(c)(4) (C) for reporting Audi racing news and providing commentary. The use of the term Audi was descriptive in the necessary context of identifying *audisport.com* as a site for promoting Audi racing and reporting racing news and commentary. 15 U.S.C. §1125(c)(4)(B) and (C).

6. **Use of *audisport.com* and/or Hyperlinks Is Not False Designation under 15 U.S.C. §1125(d).**

Once the permissions from content and emails are factored in, there is little merit to Audi claims that Defendant violated the Lanham Act by his "use" of a page "falsely" stating in a disclaimer "While we are not an official part of Audi of America, we have a signed agreement allowing usage of Audi-owned trademarks." Complaint ¶15; *Decl. D'Amato*¶¶17-22. Every email from Devin Carlson and/or Melissa Grunnah offering content to Mr. D'Amato to post on *audisport.com* creates signed agreement allowing usage of Audi-owned

8

trademarks and or trade dress. MCLS § 450.831 *et. seq.*, *i.e.* § 450.837(Eff. Oct. 16, 2000); Conn. Gen. Stat. § 1-266 *et. seq., i.e.* §1-272 (Eff. Jul. 2, 2002). As far as the Website appeared on February 23, 2005, there is no false representation or designation of origin and this statement is true in the context of the News/Model content. Moreover, it has not been used except for Champion Audi and Randy Pobst and continues to be a placeholder or "under construction" from the previous endeavor with Champion Audi. *Decl. D'Amato¶5. D'Amato Dep. Tr.* at 23-04-24:10; 16:19-25; 119:21-120:11; 141:25-143:22.

7. **Statute of Limitations.**

Mr. D'Amato Registered February 11, 1999, put up a website shortly thereafter on June 4, 1999 and April 4, 2000. Audi AG contacted him on Dec. 19, 2003, over 3 years from posting his first Website, and his registration record was available to them by merely typing WHOIS in the browser, and nearly 5 years after registration.

8. **Damages and Attorney's Fees.**

An injunction is proper only to prevent an ongoing violation. *Hecht v. Bowles*, 321 US 321 (1944)(recounting the historic role of courts of equity and stating that the purpose of injunctive relief is "to deter, not to punish"). There is an absence of likelihood of confusion and no negative impact by Mr. D'Amato's continuing to maintain his site *audisport.com* on Audi as there is little potential harm because Mr. D'Amato is not a competitor in the market place and offers no competing goods or service. He further has permission to use trade dress of Audi automobiles and a prominent, effective disclaimer is present providing a link to Audi USA site.

The Sixth Circuit in *Taubman* found that as long as the Defendant has no commercial links on his websites there is no use in connection with advertising of goods and services to enjoin

9

and the Lanham Act cannot be properly invoked. Applying *Taubman* ruling, Mr. D'Amato's removed all links to a third party for selling goods and email hosting services. *Taubman at 775*.

Damages are not being requested not under ACPA anymore but for statutory trademark infringement. No damages warranted under ACPA any bad faith. No damages warranted under trademark law because the statutory damages for infringement of a famous mark only – where the infringement involves the use of a "counterfeit" or virtual duplicate of a registered mark – which is not in issue here. No duplicates of Audi marks on webpages at time complaint filed. No counterfeits on website liability cut off by hyperlinks. No profits, no sales of goods or services, no money given to Mr. D'Amato for sales of goods and services.

This is not an exceptional case to award plaintiffs' attorney's fees because there was no willful, intentional infringement of the Audi Trademarks with the website that existed at the time of the Complaint. In fact in three letters between Jan. 21 and Feb. 13, Mr. D'Amato told Audi lawyers everything and told them to check with Champion Audi. Audi lawyers filed this lawsuit instead.

## CONCLUSION

For the Foregoing reasons, Plaintiffs' motion for summary judgment should be denied.

Dated July 8, 2005                                By:  /s/Damian Wasserbauer

| Adam B. Strauss (P53319) | Damian G. Wasserbauer, Esq. |
|---|---|
| **DYKEMA GOSSETT PLLC** | **INTELLECTUAL PROPERTY ADVISORS LLC** |
| 39577 Woodward Avenue, Suite 300 | PO Box 156 |
| Bloomfield Hills, MI 48304 | Canton, CT 06019 |
| Tel.: (248) 203-0764 | Tel.: (860) 966-0989 |
| Fax: (248) 203-0763 | Fax: (860) 693-1674 |

10

CERTIFICATE OF SERVICE

I hereby certify that a copy of the above was mailed or electronically delivered on July 8, 2005 to all Plaintiff's and pro se parties of record, and filed with the Court by ECF for filing on July 8, 2005.

**The Plaintiffs by and through Counsel**

Edward C. Cutlip, Esq.
Kerr, Russell & Weber, PLC
500 Woodward Avenue, Suite 2500
Detroit, Michigan 48226-5499

Gregory D. Phillips, Esq.
Howard, Phillips & Andersen
560 E. 200 South, Suite 300
Salt Lake City, Utah 84102

By: _/s/Damian Wasserbauer_____