UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUDI AG and VOLKSWAGON
of AMERICA, INC.

            Plaintiffs,                  CASE NO. 04-70665

-vs-                               PAUL D. BORMAN
                               UNITED STATES DISTRICT JUDGE

BOB D'AMATO d/b/a
QUATRO ENTHUSIASTS

            Defendant.
_____/

**<u>OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT</u>**

**<u>BACKGROUND:</u>**

        Audi AG and Volkswagon of America, Inc. ("Plaintiffs") have filed suit against Bob

D'Amato, an individual d/b/a as Quattro Enthusiasts  ("Defendant") based on the alleged

infringement of its trademark registrations.  Plaintiffs' Complaint contains the following counts:

        Count I - Trademark and Trade Dress Dilution under 15 U.S.C. § 1125(a);

        Count II - Trademark Infringement under 15 U.S.C. § 1114;

        Count III - False Designation of Origin or Sponsorship, False Advertising, and Trade

Dress Infringement under 15 U.S.C. §1125(a);

        Count IV - Cyberpiracy

        Count V - Common Law Trademark Infringement.

Plaintiff seeks a preliminary and permanent injunction, compensatory damages, treble damages, attorneys's fees and costs.  On May 5, 2004, Defendant filed its answer and also asserted the following Counterclaims:

Count I - Declaratory Judgment of Non-Violation of Trademark and Trade Dress Dilution under 15 U.S.C. § 1125(c);

Count II - Declaratory Judgment of Non-Violation of Trademark Infringement under 15 U.S.C. § 1114;

Count III - Declaratory Judgment of Non-Violation of False Designation of Origin or Sponsorship, False Advertising, and Trade Dress Infringement under 15 U.S.C. § 1125(a);

Count IV - Declaratory Judgment of Non-Violation of Cyberpiracy under 15 U.S.C. § 1125(a);

Count V - Declaratory Judgment of No Common Law or State Law Trademark Infringement;

Count VI - Declaratory Judgment of No Unfair Competition;

Count VII - Declaratory Judgment of No Unjust Enrichment;

Count VIII - Defamation;

Count IX - Quiet Title.

On October 19, 2004, the Court issued an Opinion and Order denying Defendant's Motion to Dismiss for lack of personal jurisdiction, and improper venue and also granted Plaintiffs' Motion to Dismiss Count VIII of Defendant's Counterclaim for Defamation.

This lawsuit is based upon Bob D'Amato's website www.audisport.com.  Defendant registered the domain name www.audisport.com.  (Answer ¶21).   Plaintiffs claim that Defendant

2

infringes and dilutes its world famous trademarks "AUDI", the "AUDI FOUR RING LOGO", and 'QUATTRO" and the distinctive trade dress of Audi automobiles (the "Audi Trademarks")[1]. (Scipione Dec. ¶4, Plaintiffs' Motion Ex. 1).  Defendant contends his website targets Audi enthusiasts.  During 2002, Defendant redesigned the website to display the four ring Audi logo. (*Id.* Exhs. 17 for website as in 2002).  In late March 2003, Defendant offered to sell shirts and hats bearing the mark AUDI SPORT on his website.  (*Id.* Ex. 3).  At this same time, Plaintiffs on www.audi.com offered to sell shirts and hats bearing the mark AUDI SPORT.  (Scipione Dec. ¶7, Plaintiffs' Motion Ex. 1).  Defendant commissioned a graphic designer, Thompson Smith to create two logos incorporating the AUDI RING LOGO which Defendant displayed on his website.  (Defendant's Motion, Exhs. 17-21).  On May 21, 2002, Smith sent the following email to Defendant pertaining to his services on www.audisport.com:

> Last week I spent some time surfing and found the following information helpful for us. Looked at http://www.audi.com and noticed a few things that need to be clarified first we/I dive into this.
>
> 1.  Audi already HAS a "Collection" site that is really well done with "some very limited" Audi Sport goodies.  Are we taking over management, production of this and it will then become "audisport.com"?
>
> 2.  Are you sure that we have the licensing rights to reproduce "Audi", "Audi Sport", quattro, etc. logos?  If we do, lets please see this in writing for working with vendors, etc. I will need a copy of this.
>
> 3.  Will the new company be incorporated, and we are employees/partners or are we going to be sub-contractors for AoA?
>
> 4.  If incorporated or LLC as www.audisport.com, do we have a corporate lawyer?

---

[1]Plaintiffs' claims are based only on these four primary Audi Trademarks.  As Plaintiffs point out in their Reply "[a]ny disputes concerning Audi's use of AUDI SPORT is immaterial to the question of D'Amato's liability for his unauthorized use of those four trademarks [the Audi Trademarks]."  (Plaintiffs' Reply at 2).

(D'Amato Dep. Ex. 3).

Defendant also displayed on the text of the homepage of the website: "Who are we?  We are a cooperative with Audi of America, and will be providing the latest products for your Audi's and information on Audisport North America."  (Plaintiffs' Motion, Exhs. 17-21).  Defendant has testified that he never received written permission from anyone to display the Audi Trademarks.  (D'Amato Dep. at 56-57, 85, 91-93).  Defendant now contends in his supplemental brief that he received legally binding permission from Plaintiffs through emails sent by Devin Carlson and Melissa Grunnah.

Regarding Melissa Grunnah, Defendant sets forth the following in his supplemental affidavit:

> Since the spring of 2003 to the present, I received email, oral and written communications from Melissa Grunnah, Audi AG, currently Audi AG's Press Officer. Devin Carlson initially directed me to Melissa Grunnah, who sends me news and press releases by e-mail about Audi racing events.  She has on more than one occasion given me permission to post news, content, images and racing information at *audisport.com* as well as emailed to other multiple parties including *audiworld.com*.  She sends copies of this content by email to multiple people, of which I am one of, on the email distribution list.

(D'Amato Decl. ¶19).

Defendant testified that he received verbal authorization to display Audi Trademarks from Devin Carlson, an Audi salesperson employed by Champion Audi, an Audi dealer located in Pompano, Florida.   Defendant testified that he asked Carlson if it was okay to display the Audi logos on his website, and Carlson told him it had been authorized by Bob Skal.  (D'Amato Dep. 50-56, 146).  Defendant testified that he had asked Bob Skal for written authorization "many, many, many times."  (*Id.* at 56).  Defendant further testified:

> You know, he had - - I wish I wrote down some of the excuses that he gave me because

4

> I'd be using them, you know, at work all the time. His wife was sick; he didn't get to it. He was sick; he didn't get to it. His computer crashed; he couldn't get to it. AOL was down; he wasn't able to find it. He was on vacation; he wasn't able to get to it. I mean these are, you know, actual things. I asked for a name [of the person employed by Audi who provided Mr. Skal with the written authorization], and he couldn't provide the name.

(*Id.* at 56-7). Defendant stated that he was still asking Skal and Carlson to produce written authorization around the time Defendant was served with this lawsuit. (*Id.* at 56-7, 85, 91-3). Plaintiffs provide evidence that Bob Skal is not affiliated with Audi in any way. (Scipione Dec. ¶14, Plaintiffs' Motion Ex. 1).

> Champion Audi entered into an Audi Dealer Agreement with Plaintiffs, which provided:
>
> This agreement does not grant Dealer [Champion Audi] any license or permission to use Authorized Trademarks except as mentioned herein, and Dealer has no right to grant any such permission or interest.

(*Id.* Ex. 4).

> In 2002, Defendant testified that he entered into an agreement with Devin Carlson in which Defendant offered goods and services for sale on the website with an "Audi Sport" logo in exchange for a percentage of the sales revenue. (D'Amato Dep. at 84, 89-90). Defendant further testified:

> The good part of it was that there was potential that I would get reimbursed for my services. You know, I bought the server, I put a lot of time into it, I pay for the electricity, I pay for the broadband connection, the software that's running on it ... So it was nice to know that, you know, potentially there would be some, you know, reimbursement for my time and expenses.

(*Id.* at 66-67).

> Pursuant to that agreement, Defendant displayed an "Audisport Boutique and Services" webpage where he offered to sell hats, shirts bearing the AUDI SPORT logo. Defendant also implemented an email subscription service offering "audisport.com" email addresses (e.x.

yourname@audisport.com).  (*Id.* at 114-118).  Defendant also currently offers to sell advertising space on the website.  In connection with its offer to sell advertising space on the website, the website provided:

> Thank you for your interest in advertising with AudiSport.com.  We are a rapidly growing Audi enthusiast web site with monthly hit rates in excess of 300,000.  While we are not an official part of Audi of America, we have a signed agreement allowing usage of Audi-owned tradenames.  Advertisers at Audisport.com have the opportunity to reach a highly focused online community and typically experience click-through rates between 1.5-3.5%.

(Plaintiff's Motion, Exh. 21).  The website also includes a disclaimer stating "this page is not associated with Audi AG or Audi USA in any way." (*Id.* Exh. 17).

On May 19, 2003, Devin Carlson sent the following email to Defendant:

> We are in the process of pulling the plug on Audisportline.  We are finding that the internet market is something that needs to be massaged over time, and we don't have the ability to commit to it.  If you are interested in purchasing that end of the business from us, we have everything in place including a relationship with the merchandise distributor with the logo already digitized.  If we had the ability to dedicate the appropriate time and marketing, I am sure it would eventually go somewhere.  As of right now we stand at 0 sales and a couple of thousand in costs.  I will let you know when the actual date will be so you can remove the link.  You are free to move on with whatever you decide, and you can keep this email copy as a contract termination confirmation.  We will keep in touch for any future possibilities.  Good luck!

(Defendant's Response, Ex. 9).

Defendant received cease and desist letters from Plaintiffs on December 19, 2003, December 22, 2003 and January 8, 2004.  (Answer ¶17).  On December 23, 2003, Devin Carlson provided the following comments relating to Plaintiffs' first cease and desist letter:

> I wanted to chat with you a little more about your situation.  I have checked into some of this trademark stuff because we are doing some marketing over the internet right now.....  Bob [Skal] is no longer part of our company, he is full time retired with his wife now.  I do recall him mentioning that he had spoke to legal about selling on your website.  I probably would take that with a grain of salt since there is certainly nothing in writing....

6

You are an individual who is not profiting from this website. However, because you have a boutique on there advertising mailboxes for a fee, this could be considered trying to profit from a trademark. You can take this as far as you want to go, but if I were in your shoes, I would probably just surrender the site instead of incurring the minimum fine of $1,000 or up to a maximum of $100,000. But remember, I am in no means a lawyer.

It is a shitty thing! You haven't really done anything with the site to profit from. Large corps are really cracking down on the small guy. I am sure that Audi probably just wants their site back.

(Defendant's Response, Ex. 10).

Plaintiffs filed the present motion for summary judgment on February 8, 2005. On April 22, 2005, Defendant filed its brief in opposition. On May 31, 2005, Plaintiffs filed their Reply. Oral argument was initially scheduled for June 30, 2005. At the June 30, 2005 oral argument, Defendant presented the Court with additional evidence to support his contention. The Court allowed Defendant to file a supplemental brief to incorporate the evidence, contingent upon Defendant reimbursing Plaintiffs' counsel's travel costs. Defendant agreed, and filed his supplemental brief on July 8, 2005, and Plaintiffs responded on July 15, 2005. Oral argument was rescheduled and held on July 29, 2005.

**ARGUMENTS:**

1.      Plaintiffs' Argument

Plaintiffs argue that there is no genuine issue of material fact as to all of its claims set forth in its complaint. Plaintiffs contend that they are entitled to summary judgment on their Trademark Infringement claim, False Designation of Origin or Sponsorship, False Advertising, and Trade Dress Infringement claim, and its Common Law Trademark Infringement claim. (Plaintiffs' Motion at 8). Plaintiffs contend that summary judgment is appropriate on these claims because the central element of a "strong likelihood of confusion" between the trademarks

7

at issue is present.  (*Id.* at 8-9).  Plaintiffs also contend that they are entitled to summary judgment on their Trademark Dilution and Cyberpiracy claims because there is no issue of fact that they meet the required elements for those cause of actions.  (*Id.* at 13-15).  Lastly, Plaintiffs contend that they are entitled to statutory damages and attorney's fees in addition to injunctive relief based upon Defendant's intentional disrespect and reckless disregard for its trademark rights.  (*Id.* at 19).

      2.      Defendant's Argument

      Defendant argues that Plaintiffs' lawsuit is time barred by the statute of limitations and should be precluded based on the doctrine of estoppel, acquiescence or laches.  (Defendant's Response at 7-9).  Defendant also argues that he did not violate any of the factors for Cyberpiracy because he used www.audisport.com in a noncommercial way.  (*Id.* at 9).  Defendant has also filed a Federal Rule of Civil Procedure 56(f) affidavit contending that summary judgment should not be granted because he has not had enough time for discovery. (*Id.* at 10, fn.1).

      Defendant contends that Plaintiffs have failed to meet their burden on their Federal and Common Trademark Infringement claims.  (*Id.* at 14).  Defendant argues that the emails he received from Devin Carlson and Melissa Grunnah created legally binding permission for him to display the Audi Trademarks.  (Defendant's Supplemental Brief at 3).  Defendant further argues that his alterations to the website absolve him from liability.  (*Id.* at 5).  Defendant contends that Plaintiffs have abandoned AUDI SPORT and have submitted no evidence of distinctiveness, famous or secondary meaning in it.  (Defendant's Response at 17).  Accordingly, Defendant also provides that Plaintiffs have failed to establish False Designation of Origin and Trademark

Dilution.  (*Id.* at 16-17).

**ANALYSIS:**

    **A.**    **Standard for Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim,

counterclaim, or cross-claim is asserted may "at any time, move with or without supporting

affidavits, for a summary judgment in the party's favor as to all or any part thereof."  Fed. R.

Civ. P. 56(b).  Summary judgment is appropriate where the moving party demonstrates that there

is no genuine issue of material fact as to the existence of an essential element of the nonmoving

party's case on which the nonmoving party would bear the burden of proof at trial.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any," which it believes demonstrate
> the absence of a genuine issue of material fact.

*Id.* at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that

fact "would have [the] effect of establishing or refuting one of the essential elements of a cause

of action or defense asserted by the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.

1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted).  A dispute over a

material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine

issue of material fact for trial.  *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir.

1993).  In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party.  *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" will mandate the entry of summary judgment.  *Celotex*, 477 U.S. at 322-23.  The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The rule requires that non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact.  *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

**B.    Discussion**

At the outset, the Court addresses two issues: (1) Defendant's filing of a Federal Rule of Civil Procedure 56(f) affidavit; and (2) the Court's findings in the October 19, 2004 Order.

First, Defendant filed a Rule 56(f) affidavit contending that he cannot oppose Plaintiffs' motion for summary judgment without additional discovery because Plaintiffs have not responded to set of requests for admission, interrogatories, and production of documents or allowed Defendant to depose a Plaintiffs' witness pursuant to Rule 30(b)(6).  The Court finds that Defendant's Rule 56(f) affidavit will not defeat summary judgment against Defendant.  The Court finds that a Rule 56(f) affidavit is appropriate when a party files a motion for summary

judgment before the close of discovery.  In this case, Plaintiffs' motion for summary judgment

was filed after the close of discovery.  Rule 56(f) is not intended to aid those "who occasioned

their own predicament through sloth." *Wichita Falls Office Assoc. v. Banc One Corp.,* 978 F.2d

915, 919 (5th Cir. 1992).  Further:

> [t]he Sixth Circuit has held that the following factors are relevant to determining whether
> a district court's denial of a Rule 56(f) motion was an abuse of discretion: when the
> appellant learned of the issue that is the subject of the desired discovery; whether the
> desired discovery would have changed the ruling; how long the discovery period lasted;
> whether the appellant was dilatory in its discovery efforts, and whether the appellee was
> responsive to discovery requests.

*Estes v. King's Daughters Medical Center,* 59 Fed. Appx. 749, 754 (6th Cir. March 6, 2003)

(unpublished) (quoting *Plott v. General Motors Corp., Packard Elec. Div.,* 71 F.3d 1190, 1196-

97 (6th Cir. 1995).  The Court notes that the discovery sought by Defendant was not served until

after hours on the discovery deadline set in the Court's Scheduling Order.  Further, the discovery

sought by Defendant related to an alleged abandonment of Plaintiffs' mark.  Defendant's counsel

admitted at the hearing before Magistrate Judge Capel he was aware of this issue at least as early

as December 14, 2004.  (Hearing Transcript at 19-20).  Magistrate Judge Capel denied

Defendant's motion to compel responses to the discovery and to amend the Scheduling Order to

extend the discovery deadline, which this Court affirmed on June 17, 2005.  The Court finds that

this contention has been addressed and rejected by this Court.  Therefore, the Court will

adjudicate Plaintiffs' Motion based on the evidence before it, and denies Defendant's Rule 56(f)

affidavit.

Second, the parties, particularly the Plaintiffs, refer to the Court's findings in its October

19, 2004 Order as established findings for purposes of the instant motion.  The Court finds that

to the extent it made factual findings in its October 19, 2004 Order, these findings were made in

the context of a Federal Rule of Civil Procedure 12(b)(6) motion in which the Court considered all affidavits and pleadings in a light most favorable to the non-moving party, and did not weigh the controverting assertions of the party seeking dismissal. (October 19, 2004 Order at 6). In the instant motion, discovery has been completed, and the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party, in this case, the Defendant. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984). The legal issues in dispute are discussed below.

### 1.    Defendant's Argument that Plaintiffs' Lawsuit is Untimely

The Lanham Act does not contain a statute of limitations. Defendant argues that this lawsuit is untimely because the analogous Michigan statute of limitations has run. Defendant sets forth the following argument in support of its claim that Plaintiffs' lawsuit is untimely:

> In absence of unusual circumstances, a trademark suit will not be barred before the analogous state statute of limitations has run but will be barred after the statutory time has run. The analogous Michigan statute of limitations in this case is three years; and this standard also applies to the ACPA. *Herman Miller, Inc. v. Palazzett Imports & Exports,* 270 F.3d 298, 321 (6th Cir. 2001). Defendant has openly possessed the domain name *audisport.com* without any effort to conceal the same for at least 3 years without causing any dilution or otherwise infringing any rights of Plaintiffs.

(Defendant's Response, at 7). Therefore, Defendant contends that this lawsuit should be dismissed because it is untimely. The Court finds that there are several problems with Defendant's argument. First, Defendant incorrectly assumes that Michigan's three year statute of limitations applies to the instant case. The Sixth Circuit rejected the contention that Michigan's three year statute of limitations applies to claims brought under the Lanham Act in *Ford Motor Co. v. Catalanotte,* 342 F.3d 543 (6th Cir. 2003). Instead, the Court held:

> Catalanotte's argument is an attempt to apply a statute of limitations that is inapplicable to Lanham Act claims. Although the Supreme Court has adopted analogous state statutes

12

> of limitations in the context of certain federal actions ... courts have not treated Lanham Act cases in the same manner.  Instead, the 'Lanham Act does not contain  a statute of limitations.  In determining when a plaintiff's suit should be barred under the Act, courts have consistently used principles of laches as developed by courts of equity.  Unlike statutes of limitations, 'laches is not ... a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced.'  Laches, rather than a state statute of limitations, governs claims brought to enforce an 'equitable right created by Congress.'

(*Id.* at 550).  Defendant initially claimed that he first posted his website on November 30, 2001.

(Defendant's Response at 1, citing Ex. B, Decl. of Jared Cherry).  Defendant now contends

through his supplemental brief and affidavit that the website was posted on June 4, 1999 and

April 4, 2000.  Plaintiffs contacted Defendant regarding the website on December 19, 2003, and

filed this lawsuit on February 23, 2004.  The Court finds that the principle of laches does not bar

this claim.

As noted above, the principles of laches determine whether Plaintiffs' lawsuit was timely

filed.  As quoted above, the Sixth Circuit provides: "[t]he Lanham Act does not contain a statute

of limitations.  In determining when a plaintiff's suit should be barred under the Act, courts have

consistently used principles of laches as developed by courts of equity."  *Ford Motor Co. v.*

*Catalanotte*, at 549 (6th Cir. 2003).   The Sixth Circuit provided in *Herman Miller Inc., v.*

*Palazzetti Imports & Exports*, 270 F.3d 298 (6th Cir. 2001):

> Laches is the 'negligent and unintentional failure to protect one's rights.'  A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it.  There is a strong presumption that a plaintiff's delay in bring (sic) suit for monetary relief is not unreasonable as long as the analogous statute of limitations has not lapsed.  'Only rarely should laches bar a case before the analogous statute has run.  The statute of limitations in a trademark case is that for injury to personal property.  Under Michigan law, the period is three years.

(*Id.* at 320-21).  Accordingly, under Defendant's initial contention - that he first posted the

website on November 30, 2001 - there is a presumption against the application of laches because

13

Plaintiffs filed suit within three years after Defendant posted his website.

Even under Defendant's new contention regarding the date he posted the website, the Court finds that the lawsuit is not time barred. To assert laches, Defendant must show: (1) that Plaintiffs knew of the infringing use; (2) that Plaintiffs' delay in challenging his infringement was inexcusable or unreasonable; and (3) that he was unduly prejudiced by Plaintiffs' delay. *Kellogg Co. v. Exxon Corp.,* 209 F.3d 562, 569-70 (6th Cir. 2000). The Court finds that Defendant has failed to make this showing.

Defendant has presented no evidence indicating that Plaintiffs knew of his infringing use and inexcusably failed to challenge it. Defendant contends that he was unduly prejudiced because he relied on the alleged assurances from Champion Audi that he had permission to use Plaintiffs' trademarks. As set forth in this Opinion, Champion Audi has no authority to allow the use of Plaintiffs' trademarks, and even if an agreement did exist between Defendant and Champion Audi, it does not confer the right for Defendant to use Plaintiffs' trademarks. See also *Audi v.* D'Amato*,* 341 F. Supp.2d at 746 (E.D. Mich. 2004). Further, D'Amato has testified that there was no written agreement between he and Champion Audi. (D'Amato's Dep. at 56-57). Plaintiffs have set forth that they never authorized Defendant to use or display Audi Trademarks in domain names, in connection with the promotion of goods or services, or in any other manner. (Scipione Dec. ¶13, Plaintiffs' Motion Ex. 1). Therefore, the Court rejects Defendant's argument that Plaintiffs' actions constitute acquiescence and lack of diligence prejudicial to Defendant. Accordingly, the Court finds that Defendant's arguments based upon the equitable doctrines of estoppel, acquiescence or laches, fails, and this lawsuit is not time barred.

**2.      Defendant's Argument that his Subsequent Alterations to**

14

**www.audisport.com Absolve Him from Liability**

In his supplemental briefing, Defendant argues that because he changed the website and logo on January 27, 2004, his expressions on the www.audisport.com are not likely to cause confusion.  Further, Defendant argues that this Court no longer has jurisdiction under the Lanham Act because of these changes.  The Court rejects both arguments.

First, and most importantly, Defendant's infringing use is ongoing, as set forth in this Opinion. Therefore, Defendant's arguments fail for that reason alone.

Even if the Court were to assume that Defendant changed his website to a fair use non-commercial website, the Court still finds that he is not absolved from liability.  The Lanham Act and the ACPA do not require that an infringing or bad faith use persist for any particular duration.  Under the ACPA, for famous marks similar to the Audi Trademarks, liability arises based upon the mere registration if done in bad faith.  See 15. U.S.C. §1125(d)(1)(A)(ii).

The Court finds that liability for trademark infringement and domain name cyberpiracy may be based upon a defendant's past use of a domain name.  In other words, Defendant's argument that www.audisport.com is no longer infringing and now represents a nominal non-commercial use which absolves him from liability - - fails.  As the Third Circuit provided addressing a similar argument:

> We are aware of no authority providing that a defendant's 'fair use' of a distinctive or famous mark only after the filing of a complaint alleging infringement can absolve that defendant of liability for his earlier unlawful activities.  Indeed, were there such authority we think it would be contrary to the orderly enforcement of the trademark and copyright laws.

*Shields v. Zuccarini,* 254 F.3d 476, 486 (3d. Cir. 2001).  In *Zuccarini,* the plaintiff made commercial use of five infringing domain names until shortly after being served with the lawsuit.

15

The Court also explained, "[t]here is nothing in the statute that requires that the court consider the duration of the infringement when calculating statutory damages." *Id.*

Similar to the *Zuccarini* Court, the Court finds that there is no authority supporting Defendant's argument that his subsequent alterations of www.audisport.com absolve him of liability. The Court also rejects Defendant's similar argument that his website's alterations take this action outside the Lanham Act's jurisdiction. The Court finds that its jurisdiction is not defeated in this circumstances unless there is a substantial possibility that the act sought to be enjoined may be repeated." *McCarthy on Trademarks and Unfair Competition* §30.11. As one court has provided, voluntary cessation of infringing activity may defeat a request for an injunction against such activity only when the defendant's alterations are "irrefutably demonstrated and total." *Polo Fashions, Inc. v. Dick Bruhn Inc.,* 793 F.2d 1132, 1135 (9th Cir. 1986). Indeed, the "standard ... is whether the defendant is free to return to its illegal activity at any time," and it is the defendant's burden to "show the 'subsequent events made it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur." *Porsche Cars N.A. v. Spencer,* 55 U.S.P.Q.2d 1026 fn. 16 (E.D. Cal. May 18, 2000) (unpublished) (internal citation omitted). The Court finds that in the instant case there is nothing in the record to demonstrate that it is clear that Defendant's infringing actions cannot be expected to recur. Further, as noted, Defendant's infringing use is ongoing, and this Court's jurisdiction continues on this basis.

In a related argument, Defendant contends that www.audisport.com is now a non-commercial website which is protected by the First Amendment and therefore brought outside the protection of the Lanham Act. Defendant cites *Taubman Co. v. Webfeats,* 319 F.3d 770 (6th

16

Cir. 2003) to support his claim.  As explained in *Taubman,* the Lanham Act is constitutional

because it only regulates commercial speech, which is entitled to reduced protections under the

First Amendment.  *Id.* at 774, citing *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*

*of New York,* 447 U.S. 557, 563 (1980).   The Lanham Act only encompasses commercial

expressions, as *Taubman* provided:

> per the language of the Lanham Act, any expression embodying the use of a mark not
> 'connection with the sale ... or advertising of any goods or services,' and not likely to
> cause confusion, is outside the jurisdiction of the Lanham Act and necessarily protected
> by the First Amendment.

*Id.* at 775.

Instantly, the Court finds that it is clear that www.audisport.com is used "in connection

with the sale ... or advertising of any goods or services" and is within the jurisdiction of the

Lanham Act and is not protected First Amendment expression.  It is undisputed that Defendant

offered to sell an assortment of goods on the website, and currently offers to sell advertising

space.  (Plaintiff's Motion, Ex. 21).  Therefore, Defendant's website is not protected by the First

Amendment.

In conclusion, the Court finds that Defendant's alterations to www.audisport.com do not

absolve him from liability in any way.

### 3.    Defendant's Claim of Abandonment

Defendant argues that Plaintiffs abandoned the trademark AUDISPORT by canceling

their registration and failing to use the trademark AUDI SPORT.  The Lanham Act defines

abandonment as follows:

> A mark shall be deemed to be 'abandoned' if either of the following occurs: (1) When its
> use has been discontinued with intent not to resume such use.  Intent not to resume may
> be inferred from circumstances.  Nonuse for 3 consecutive years shall be prima facie

17

evidence of abandonment.  'Use' of a mark means the bona fide use of such mark made
in the ordinary course of trade, and not made merely to reserve a right in a mark; (2)
When any course of conduct of the owner including acts of omission as well as
commission, causes the mark to become the generic name for the goods or services on or
in connection with which it is used or otherwise to lose its significance as a mark.
Purchaser motivation shall not be a test for determining abandonment under this
paragraph.

15 U.S.C. §1127.

The Sixth Circuit provides "[i]n order for a party to succeed on a claim of abandonment,
it must prove the elements of both non-use and intent, *i.e.* that the other party actually abandoned
its mark through non-use and that it intended to do so." (*Kellogg* at 575).  The Court notes that
Plaintiffs' complaint is based on Audi's trademarks AUDI, the AUDI RING LOGO, QUATTRO
and the distinctive trade dress of Audi Automobiles.[2]  (Complaint ¶1).  Plaintiffs' Complaint
alleges the following:

> Subsequent to Audi's development and use of the Audi Trademarks, and subsequent to
> their registration of the same, and without the consent of Audi or its predecessors,
> Defendants began using the Audi Trademarks, or confusingly similar versions of them in
> Defendants' business name, in connection with the advertising of Defendants' products
> and services and in the Internet domain name AUDISPORT.COM.

(Complaint ¶12).  As provided above, the Court finds that Plaintiffs claims are based on
Defendant's use of the Audi Trademarks in Defendant's business name "Quattro Enthusiasts", in
connection with the advertising of Defendant's products and services and the Internet domain
name AUDISPORT.COM.  The Court finds that Defendant's allegations relating to Plaintiffs'
use of AUDI SPORT is immaterial to the issue of Defendant's unauthorized use of the Audi
Trademarks alleged in Plaintiffs' complaint.  Therefore, the Court finds that Plaintiffs have not

---

[2]The Court finds that Plaintiffs have valid trademark registrations for the Audi
Trademarks.  (Scipione Dec. ¶4, Plaintiffs' Motion Ex. 1).

abandoned the Audi Trademarks.

> **4.** **Plaintiffs' Trademark Infringement, False Designation of Origin, Trade Dress Infringement, and Common Law Trademark Infringement claim.**

Plaintiffs contend that they are entitled to summary judgment on their Trademark Infringement claim, False Designation of Origin or Sponsorship, False Advertising, and Trade Dress Infringement claim, and its Common Law Trademark Infringement claim.

Plaintiffs bring their Trademark Infringement claim under 15 U.S.C. § 1114 which provides:

> (1) Any person who shall, without the consent of the registrant - -
>
> > (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive;
> >
> > (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
> >
> > shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

15 U.S.C. § 1114(a)-(b).

Plaintiffs' False Designation of Origin claim is brought pursuant to 15 U.S.C. §1125(a) which provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false

19

or misleading representation of fact, which - -

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

(15 U.S.C. §1125(a)).

Plaintiffs argue that it is undisputed that Defendant used exact counterfeits of its trademarks in commerce.  To prevail on these claims, Plaintiffs must demonstrate a "likelihood of confusion" as it is the central element in its Trademark and Common Law Infringement claims and its False Designation of Origin claim.  "Likelihood of confusion is the basic test of both common law trademark infringement and federal statutory trademark infringement."  J. McCarthy, *McCarthy on Trademarks* §23:1 (4th ed. 2004).  See *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768-69 (1992) (holding likelihood of confusion is the critical element of federal trademark infringement claim); *Frisch's Restaurants, Inc., v. Elby's Big Boy of Steubenville, Inc.,* 670 F.2d 642, 647-48 (6th Cir. 1982) (holding likelihood of confusion is the critical element with respect to claim for false designation of origin); *Kason Industries, Inc. v. Component Hardware Group, Inc.,* 120 F.3d 1199, 1203 (11th Cir. 1997) (holding likelihood of confusion is the critical element for a common law trademark infringement claim).

At the outset, the Court finds that AUDI SPORT has not become a generic term for automobile racing.  A trademark is generic when "it ceases to function to identify a single source

20

of that generic thing."  J. McCarthy, *McCarthy on Trademarks* 3 §17:8 (4th ed. 2004).  As the Sixth Circuit has held: "[t]he appropriate 'test for genericness is whether the public perceives the term primarily as the designation of the article." *Bath & Body Works, Inc. v. Luzier Personalized Cosmetics, Inc.,* 76 F.3d 743, 748 (6th Cir. 1996).   The Court further notes that "[i]f a trademark has been registered, there is a presumption that term is not generic." (*Id.* at 748). As noted above, Defendant incorporates Plaintiffs' registered protected trademark AUDI in www.audisport.com which constitutes an unauthorized use of Plaintiffs' trademark.

The Court finds that Defendant has produced no evidence demonstrating that AUDI SPORT has become a generic term for automobile racing.  Further, even without regard to Plaintiffs' common law trademark in AUDI SPORT, the Court finds that the incorporation of AUDI in Defendant's website and Quatrro in Defendant's business name is use of a name that is "likely to cause confusion."   The Court rejects Defendant's argument that Plaintiffs' infringement claim fails because they have failed to provide evidence of distinctiveness, famous or secondary meaning.  Defendant contends that the Declaration of Linda Scipione, a trademark paralegal employed by Plaintiffs is inadequate.  The Court finds that Plaintiffs have demonstrated that the Audi Trademarks are registered trademarks, and submit that they have invested millions of dollars promoting and developing the Audi Trademarks.  (Scipione Dec. ¶6, Plaintiffs' Motion Ex. 1).  The Court finds that the Audi Trademarks are famous and distinctive trademarks.

In determining whether an alleged infringement constitutes a likelihood of confusion, the

21

Sixth Circuit considers the following factors[3]:

      (1) strength of plaintiff's mark;

      (2) relatedness of the goods;

      (3) similarity of the marks;

      (4) evidence of actual confusion;

      (5) marketing channels used;

      (6) degree of purchaser care;

      (7) defendant's intent in selecting the mark; and

      (8) likelihood of expansion in selecting the mark.

*Wynn Oil Co. v. Thomas,* 839 F.2d 1183, 1186 (6th Cir. 1988).

The Court finds that based on the analysis of these factors, Plaintiffs have demonstrated a strong likelihood of confusion.

### 1. Strength of the Marks

"The strength of a mark is a factual determination of the mark's distinctiveness. The more distinct a mark, the more likely is the confusion resulting from its infringement, and therefore the more protection it is due." *Frisch's Restaurants Inc. v. Shoney's Inc.,* 759 F.2d 1261, 1264 (6th Cir. 1985). The crucial inquiry is to what extent consumers recognize the mark. *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.,* 931 F.2d 1100, 1109 (6th Cir.

---

[3]The Court finds that this matter is best addressed under the Sixth Circuit's eight factor test. The Court, however, notes that the Sixth Circuit has provided that "a likelihood of confusion is presumed when a defendant intentionally copies a trademark design 'with the intent to derive a benefit from the reputation of another.'" *Ford Motor Co. v. Lloyd Design Corp.,* 22 Fed. Appx. 464, 468 (6th Cir. October 25, 2001) (unpublished) (quoting *Exercizio v. Roberts,* 944 F.2d 1235, 1243 (6th Cir. 1991)).

1991).  As noted above, the Court finds that the Audi Trademarks are recognizable and widely known.   The Court finds that this factor favors Plaintiff.

### 2.  Relatedness of Goods

It is undisputed that both parties in this case offered to sell hats and shirts on the Internet in direct competition with each other.   Plaintiffs' website www.audi.com sells shirts and hats bearing the trademark AUDI SPORT and a red parrallelogram.  (Scipione Dec. ¶7, Plaintiffs' Motion Ex. 1).  The Court notes that Defendant no longer displays these items on his website. However, it is undisputed the website in the past offered to sell email addresses and merchandise with the Audi Trademarks, and currently offers to sell advertising space.  Therefore, the Court finds that this factor favors Plaintiffs.

### 3. Similarity of the Marks

The Court finds that Defendant's website incorporates the Audi Trademarks.  As noted above, www.audisport.com incorporates Plaintiffs' trademark AUDI, and Defendant's business name "Quattro Enthusiasts" incorporates Plaintiffs' trademark "QUATTRO."[4]   *Ford Motor Co. v. Great Domains.com, Inc.,* 177 F. Supp.2d 635 (E.D. Mich. 2001) although decided in the context of a Federal Rule of Civil Procedure 12(b)(6) motion, is instructive.  In *Great Domains.com,* the disputed domain names - "4fordparts.com, 4fordtrucks.com, lincolntrucks.com, jaguarcenter.com, jaguarenthusiastsclub.com, vintagevolvos.com and volvoguy.com incorporated either the FORD, LINCOLN, JAGUAR, or VOLVO trademark.  The Court held that the domain names were identical or confusingly similar.  The Court provided

---

[4]The Court also notes that Plaintiffs contend that although they cancelled their registration for AUDI SPORT, they still possess common law trademark rights in AUDI SPORT.

"courts consistently have found that 'slight differences between domain names and registered marks, such as the addition of minor or generic words to the disputed domain names are irrelevant." (*Id.* at 641). The Court further provided "unless words or letters added to the plaintiff's mark within the domain name clearly distinguish it from the plaintiff's usage, allegations that a domain name incorporates a protected mark generally suffice to satisfy the 'identical or confusingly similar requirement." (*Id.* at 642). Similarly, the Court finds Defendant's use of the Audi Trademarks satisfies the "identical or confusingly similar requirement." Accordingly, the Court finds that this factor favors a finding of likelihood of confusion.

### 4. Evidence of Actual Confusion

The existence of evidence of actual confusion is highly probative of trademark confusion. However, its absence is not an indication that there is no likelihood of confusion because evidence of actual confusion is rarely available in trademark cases. *Wynn Oil Co.* at 1189.

Plaintiffs contended at oral argument that Thompson Smith's email to Defendant is evidence of actual confusion. The Court agrees with Plaintiffs' contention. As set forth above, Smith's email provided:

Last week I spent some time surfing and found the following information helpful for us.

Looked at http://www.audi.com and noticed a few things that need to be clarified first we/I dive into this.

1. Audi already HAS a "Collection" site that is really well done with "some very limited" Audi Sport goodies. Are we taking over management, production of this and it will then become "audisport.com"?

2. Are you sure that we have the licensing rights to reproduce "Audi", "Audi Sport", quattro, etc. logos? If we do, lets please see this in writing for working with vendors, etc. I will need a copy of this.

24

3.  Will the new company be incorporated, and we are employees/partners or are we going to be sub-contractors for AoA?

4.  If incorporated or LLC as www.audisport.com, do we have a corporate lawyer?

(D'Amato Dep. Ex. 3).  Smith plainly sets forth in his email that he was confused over the two websites.  Further, even without Smith's email, because Defendant used the Audi Trademarks in his Internet domain name, his business name and had displayed the Four-Ring logo on his website, the Court finds that there is, at minimum, a likelihood of actual confusion.

### 5. Marketing Channels Used

The Court must look to the similarity of the market approaches used by the parties to evaluate the similarity of the marketing channels used by the parties.  *Daddy's Junky Music Stores v. Big Daddy's Family Music Center,* 109 F.3d 275, 285 (6th Cir. 1997).  In this case, both parties marketed and offered to sell AUDI SPORT hats and shirts on the Internet.  As such, the Court finds that this factors weighs in Plaintiffs' favor.

### 6. Likely Degree of Purchaser Care

Plaintiffs argue that consumers rely on the presence of the Audi Trademarks as indicators of source, or at least as indicators of Audi's endorsement, and will not likely search beyond the trademark to determine whether the goods are authorized or genuine.  Plaintiffs contend that this is quintessential confusion, therefore this factor must be weighed in its favor.  The Court agrees with Plaintiffs and find that this factor favors a finding of a likelihood of confusion.

### 7. Defendant's Intent in Selecting the Mark

The "intent of defendants in adopting (their mark) is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of (the plaintiff,) that fact alone may be sufficient to justify the inference that there is confusing similarity."  *Frisch's*

*Restaurants,* at 647-48).  (Internal citation omitted).  At the time Defendant registered

www.audisport.com, he testified that he was aware that AUDI, QUATTRO and AUDI RING

LOGO are trademarks used by Plaintiffs. Defendant testified that when he decided to register the

domain name www.audisport.com, he went to Volkswagon of America's website, and wrote an

email asking if there were any issues related to him registering the domain name, and the email

"bounced" or did not go through.  (D'Amato's Dep. at 14).  D'Amato further testified at that

time, he did not consult with anyone else regarding the use of www.audisport.com.  (*Id.*).

Defendant commissioned a graphic designer, Thompson Smith to create two logos incorporating

the AUDI RING LOGO which Defendant displayed on his website.  (Defendant's Motion, Exhs.

17-21).  As noted above, on May 21, 2002, Smith sent an email to Defendant expressing

confusion pertaining to his services on www.audisport.com.

 As set forth above, Defendant attempted to receive authorization from Audi, and also

received an email by Thompson Smith, which demonstrate that he understood that his use and

display of the Audi Trademarks implicated Audi.  Further, Defendant sought written

authorization from Champion Audi.  The Court finds that these facts demonstrate that Defendant

was aware that www.audisport.com implicated Audi's trademarks.

 On the other hand, Defendant contends through his supplemental brief that he received

verbal authorization to display Audi's trademarks from Devin Carlson, an Audi salesperson

employed by Champion Audi, and Melissa Grunnah.   Defendant testified that he asked Carlson

if it was okay to display the Audi logos on his website, and Carlson told him it had been

authorized by Bob Skal.  (D'Amato Dep. 50-56, 146).  Defendant testified that he had asked Bob

Skal for written authorization "many, many, many times."  (*Id.* at 56).  Defendant further

testified:

> You know, he had - - I wish I wrote down some of the excuses that he gave me because I'd be using them, you know, at work all the time.  His wife was sick; he didn't get to it.  He was sick; he didn't get to it.  His computer crashed; he couldn't get to it.  AOL was down; he wasn't able to find it.  He was on vacation; he wasn't able to get to it.  I mean these are, you know, actual things.  I asked for a name [of the person employed by Audi who provided Mr. Skal with the written authorization], and he couldn't provide the name.

(*Id.* at 56-7).  Defendant stated that he was still asking Skal and Carlson to produce written

authorization around the time Defendant was served with this lawsuit.  (*Id.* at 56-7, 85, 91-3).

Plaintiffs provide evidence that Bob Skal is not affiliated with Audi in any way.  (Scipione Dec.

¶14, Plaintiffs' Motion Ex. 1).

Defendant argues that his email evidence of permission is legally binding.  Defendant

cites Michigan's Uniform Electronic Transactions Act ("UETA") MCL § 450.835 which

provides:

> (1) This act does not require a record or signature to be created, generated, sent, communicated, received, stored, or otherwise processed or used by electronic means or in electronic form.
>
> (2) This act applies only to transactions between parties each of which has agreed to conduct transactions by electronic means.  Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances including the parties' conduct.

MCL § 450.835.

As set forth above, the UETA only applies when each party agrees to conduct

transactions by electronic means.  The Court finds that there is no evidence that Carlson or

Grunnah agreed to create a legally binding contract for Defendant to use the Audi Trademarks

through their emails.

Defendant also cites *Ledbetter v.  Thacker,* 2003 WL 22976338 (Mich. App. December

27

18, 2003) (unpublished) to support his claim that the emails sent by Carlson and Grunnah established a contract which allowed him to use the Audi Trademarks.  The Court finds that *Ledbetter* is not applicable to the instant facts.  In *Ledbetter,* there was extensive negotiations between plaintiff and defendant through email and letters regarding the plaintiff's employment arrangement.  The Court found that these documents constituted both an offer and acceptance and the parties intended to create a binding contract.  The Court finds that there is no such evidence instantly.  Further, both parties had authority to create a contract in *Ledbetter,* unlike the instant case.  The Court finds that *Ledbetter* is not helpful to Defendant.

The Court finds that the emails sent by Carlson and Grunnah are not legally binding. Devin Carlson is employed by Champion Audi, an Audi dealership.  Champion Audi, similar to all Audi dealerships, has no authority to license to a third party Audi trademarks, and signed an agreement that prohibits it to do so.  (*Id.* ¶8, and Exh. B attached thereto).   Devin Carlson had no authority to create a legally binding contract authorizing Defendant to use the Audi Trademarks.

Regarding Melissa Grunnah, the record demonstrates that Defendant received racing content from her through email.  Grunnah sent racing content through group emails, and Defendant was one of the recipients.  (D'Amato Decl. ¶19 providing that Grunnah "sends copies of this content by email to multiple people, of which I am one of, on the email distribution list.").  Grunnah signed her name with the title Audi Sport North American Public Relations Press Officer.  Plaintiffs contend that Grunnah is an independent contractor providing press relations services to Audi.  The Court notes that Grunnah's contact information includes her email address which is not an Audi company address (i.e. Grunnah@audi.com) but rather

28

mgrunnah@charter.net which supports Plaintiffs' contention.  In any event, there is no evidence

that Grunnah had licensing authority to allow the use of the Audi Trademarks.

Further, even if it is assumed Carlson and Grunnah had authority to license the Audi

Trademarks, the racing content provided should not be construed to give Plaintiff broad authority

to misappropriate the Audi Trademarks.  As Plaintiffs correctly point out, there is nothing to

prevent Defendant from posting such press releases at a website such as

DAMATORACING.COM.  In sum, the Court finds that Plaintiffs have not granted permission

for Defendant's infringement because neither Carlson or Grunnah had authority to grant such

permission, and the racing content provided by them did not create a binding contract to allow

Defendant to misappropriate the Audi Trademarks.

Lastly, the Court notes Defendant falsely stated on his website that he had a signed

agreement to use Audi's tradenames, and this is indicative of Defendant's intent to profit from

the Audi Trademarks.  (Defendant's Motion, Ex. 21).  In conclusion, based on the analysis

above, the Court finds that Defendant did intend to profit from the Audi Trademarks.  Therefore,

this factor favors Plaintiffs.

### 8. Expansion of Product Lines

The Court finds this factor irrelevant because the parties competed in the same field (i.e.

the selling of Audi merchandise), and no expansion need to occur to result in direct overlap of

their services.  See *PACCAR Inc. v. Telescan Technologies, L.L.C.* 319 F.3d 243 (6th Cir. 2003).

In conclusion, based on the factors examined above, the Court finds that there is a

"strong likelihood of confusion" based on the Defendant's website.  Accordingly, as "likelihood

of confusion" is the central test for these claims, the Court grants Plaintiffs' Motion for

Summary Judgment on its on its Trademark Infringement claim, False Designation of Origin or Sponsorship, False Advertising, and Trade Dress Infringement claim, and Common Law Trademark Infringement claim.[5]

**5.    Plaintiffs' Trademark Dilution Claim**

To prevail on their trademark dilution claim, Plaintiffs must show that (1) the mark is famous; (2) defendant is making a commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services. *Panavision Int'l v. Toeppen,* 141 F.3d 1316, 1324 (9th Cir. 1998). A trademark dilution plaintiff need not show that it is in competition with the defendant or that customers are likely to be confused. *Porsche Cars North America, Inc. v. Manny's Porshop, Inc.,* 972 F. Supp. 1128, 1132 (N.D. Ill. 1997).

The Court finds that Plaintiffs meet the first element, that the Audi Trademarks are famous and distinctive marks. Plaintiffs have spent millions of dollars in advertising, promoting and developing the Audi Trademarks throughout the world. (Scipione Dec. ¶7, Plaintiffs' Motion Ex. 1). Further, the Court finds that Defendant has made commercial use of the Audi

---

[5]The Court finds that www.audisport.com's disclaimer does not change this analysis. First, it has been held "disclaimers are generally regarded as ineffective" in counterfeiting cases. *Ford Motor Co. v. Lloyd Design Corp.,* 184 F.Supp.2d 665, 673 (E.D. Mich. 2002). Further, and more importantly, the fundamental premise of trademark law is that a trademark holder has the exclusive right to use the trademark on competing goods, and to exclude others from their use. As the United States Supreme Court has provided "Trademark law, like contract law, confers private rights, which are themselves rights of exclusion." *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board,* 527 U.S. 666 (1999) (internal citation omitted). To allow the use of Plaintiffs' trademarks by merely setting forth a disclaimer would contravene this fundamental principle of trademark law.

Trademarks.  The Court finds that www.audisport.com offered to sell email subscriptions and advertising space and hats, shirts, and cooler bags all bearing the AUDI SPORT logo. (D'Amato's Dep. at 114-118, Plaintiffs' Ex. 20).  The Court also finds that the Audi Trademarks were famous and distinctive before Defendant's use of them.

The Court also finds that the final element is met, namely that the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services.  As the Supreme Court provided in *Moseley v. V. Secret Catalogue, Inc.,* 537 U.S. 418, 434 (2003) "direct evidence of dilution such as consumer surveys will not be necessary if actual dilution can reliably be proved their circumstantial evidence - the obvious case is one where the junior and senior marks are identical."  The Court in *Ford Motor Co. v. Lloyd Design Corp.,* 184 F.Supp.2d 665 (E.D. Mich. 2002) provided "[t]he closer the junior user comes to the senior's area of commerce, the more likely it is that dilution will result from the use of a similar mark."  (*Id.* at 680).  The Court finds that because identical marks were used on similar goods, this final element is established.

Defendant contends that his website merely had hyperlinks to goods (hats and shirts) and email hosting services offered by Champion Audi, and that hyperlinks create no liability to him. The Court rejects Defendant's contention.  The Court notes that Defendant continues to sell advertising space on www.audisport.com.  (Plaintiff's Motion, Ex. 21).  The Court finds that Defendant is liable for his attempt to generate advertising revenues from the goodwill present in the Audi Trademarks, as that appears to be his business model.  Further, the Court finds that there is nothing in the website's content to indicate any of the goods or services offered by Defendant emanated from Champion Audi.

Accordingly, the Court grants Plaintiffs' Motion for Summary Judgment on their trademark dilution claim.

### 6.     Plaintiffs' Cyberpiracy Claim

Plaintiffs contend that they are entitled to summary judgment on the Fourth Claim, for violation of the AntiCybersquatting Consumer Protection Act ('ACPA'), 15 U.S.C. §1125(d)(1)(A).  To prevail on this claim, Plaintiffs must show that Defendant registered, trafficked in, or used in bad faith a domain name that incorporates a famous or distinctive trademark that was famous or distinctive at the time of registration.  As noted, to prevail on this claim, Plaintiffs must show that Defendant acted in bad faith.

The Court finds that www.audisport.com incorporates the Audi Trademarks and they were distinctive and famous at the time of registration.  Plaintiffs contend that there are multiple factors indicative of bad faith under 28 U.S.C. §1125(d)(1)(B).  Section 1125(d)(1)(B)(i) lists nine factors a court may consider, including but not limited to:

> (i) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (ii) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (iii) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (iv) the person's bona fide commercial or fair use of the mark in a site accessible under the domain name;
>
> (v) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(vi) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(vii) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(viii) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(ix) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c)(1) of this section.

Section 1125(d)(1)(B)(ii) further provides:

Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.

Plaintiffs contend that the first three factors §1125(d(1)(B)(i) through (iii) are present inasmuch as Defendant has no rights in AUDI and has never used AUDI in connection with a bona fide, non-infringing offering of goods or services. The Court agrees with Plaintiffs. The Court finds that the first factor is present, which pertains the trademark or other intellectual property rights of the person, if any, in the domain name. Defendant has no other intellectual property rights in www.audisport.com. Similarly, the second factor which is the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person also favors Plaintiffs. The third factor - the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services also favors Plaintiffs. The Court notes that Defendant uses the website to provide information to

33

Audi enthusiasts.  On the other hand, the only goods or services offered for sale on the website

infringed upon the Audi Trademarks.  Therefore, the Court finds that this factor favors Plaintiffs.

The fourth factor, whether defendant engaged in any bona fide noncommercial or "fair

use" of the mark, also favors Plaintiffs.  As one Court noted in addressing this factor:

> [t]he purpose of this factor is to protect domain name registrants and users engaged in
> protected activities, such as political criticism or parody.  Here, [the defendant's] use of
> the domain names is purely commercial and involves none of these.  Thus, this factor
> also supports a conclusion of bad faith.

*International Bancorp, L.L.C. v. Societe Des Baines De Mer Et Du Cercle Des Etrangers A*

*Monaco,* 192 F. Supp.2d 467, 486 (E.D. Va. 2002).  The Court finds that Defendant attempted to

sell merchandise containing the AUDI SPORT logos.  Defendant contends that he used

www.audisport.com in a non-commercial way to promote Audi racing in North America.  On the

other hand, the website offered to sell merchandise and email addresses bearing the Audi

Trademarks, and continues to sell advertising space.  Accordingly, the Court finds that this factor

is present.

The fifth factor, §1125(d)(1)(B)(v), concerns the person's intent to divert consumers from

the mark owner's online location to a site accessible under the domain name that could harm the

goodwill represented by the mark for commercial gain by creating a likelihood of confusion as to

the source, sponsorship, affiliation, or endorsement of the site.  "As intent is rarely discernible

directly, it must typically be inferred from pertinent facts and circumstances."  (*International*

*Bancorp* at 486).  Plaintiffs contend that such intent can be inferred because Defendant

deliberately designed his website by displaying the Audi Trademarks and affirmatively

misrepresented its affiliation with Audi, to lead consumers to believe that his website was

affiliated with Audi.  Defendant points to the link on the website to Champion Audi, and to the

fact that Defendant has not made a profit pertaining to the website.  The Court also notes

Defendant's testimony that Bob Skal represented to him that he had received authorization from

Audi to display the trademarks.  On the other hand, as noted previously, Defendant never

received written permission from Audi to use its trademarks, yet Defendant falsely represented

on his website that he had received such written permission.  (Plaintiffs' Motion, Ex. 21).  As

such, the Court finds that there is no question of fact as to whether Defendant intended to divert

consumers.[6]

The ninth factor, pertains to the extent to which the trademark holder's mark is famous

and distinctive.  As noted above, the Court finds that the Audi Trademarks are famous and

distinctive.

Thus, the Court finds that there are six of the nine factors demonstrating bad faith

present.  Based on these findings, the Court finds that there is the requisite finding of bad faith

for Plaintiffs' Cyberpiracy claim.

Defendant argues that the Savings Clause provision should prevent summary judgment.

The Savings Clause provides:

> Nothing in this Title shall affect any defense available to a defendant under the
> Trademark Act of 1946 including any defense under section 43(c)(4) of such act or
> relating to fair use) or a persons right of free speech or expression under the first
> amendment of the United States Constitution.

15 U.S.C. §1125(c)(4)(c).  Defendant argues:

> [i]ssues of material fact exist because Defendant's Affirmative Defenses must be
> considered, for example, defenses of common law mark AUDI SPORT being generic and
> abandoned; the defense of the Statute of Limitations; the equitable defenses of estoppel,
> acquiescence, laches.  Mr. D'Amato's sole purpose for audisport.com was to establish a

---

[6]The parties do not dispute that factors six through eight are not present.

non-commercial website to report on Audi racing events in North America.

As already explained and provided for in this Opinion, the Court finds that the defenses outlined

by Defendant fail.  Therefore, the Court finds that the Savings Clause does not apply in the

instant case.

Defendant also argues that the "reasonable belief" exception under §1125(d)(1)(B)(ii)

applies instantly.  Section 1125(d)(1)(B)(ii) provides:

> Bad faith intent described under subparagraph (A) shall not be found in any case in
> which the court determines that the person believed and had reasonable grounds to
> believe that the use of the domain name was a fair use or otherwise lawful.

The Court notes that this exception has been applied with caution.  See  J.

McCarthy, *McCarthy on Trademarks* 4 §25:78 (4th ed. 2004).  As one commentator has

provided:

> a court should, in the author's view, make use of this 'reasonable belief' defense very
> sparingly and only in the most unusual cases.  That is, the court should place emphasis on
> the phrase 'had *reasonable grounds* to believe' that the conduct was lawful, focusing
> primarily upon the objective reasonableness and credibility of the defendant's professed
> ignorance of the fact that its conduct was unlawful.  Otherwise, every cybersquatter
> would solemnly aver that it was entitled to this defense because it believed that its
> conduct was lawful.

(*Id.*).  The Court finds that the "reasonable belief" defense does not apply here.  Viewing the

facts in a light most favorable to Defendant - but objectively, the Court finds that it was

unreasonable for Defendant to believe that he had obtained the Audi Trademark rights without

obtaining any type of written authorization, and basing his belief solely upon the representations

of Bob Skal who is not affiliated with Audi in any capacity, and the emails from Carlson and

Grunnahh.  Therefore, the Court finds that the "reasonable belief" exception does not apply.

Accordingly, The Court finds that there is no genuine issue of material fact as to whether

Defendant violated the ACPA, and grants Plaintiffs summary judgment.

### 7.      Remedy for Plaintiffs

Under the statutory damages provision of the Lanham Act, a trademark owner may elect, at any time before final judgment is rendered, to recover an award of statutory damages for any use of a counterfeit mark in connection with the sale, offering for sale, or distribution of goods or services.  (15 U.S.C. §1117(c)).

Section 35(a) of the Lanham Act provides:

When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, or a violation under 43(a) [15 U.S.C. §1125(a)], shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled ... subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.  The court shall assess such profits and damages or cause the same to be assessed under its direction.  In assessing profits, the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.  In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.  Such sum in either of the above circumstances shall constitute compensation and not a penalty.

15 U.S.C. §1117(a).  The Court notes that there is no automatic monetary award even where a plaintiff succeeds in proving infringement.  As the Court provided in *Maier Brewing Co. v. Fleischmann Distilling Corp.,* 390 F.2d 117 (9th Cir. 1968):

it must be determined if the concept of unjust enrichment, utilized 'subject to the principles of equity,' will properly serve to effectuate the policies of the Lanham Act.  It would seem that it would.  The utilization of this concept will not of course make an accounting of profits automatic.  Situations will exist where it would be unduly harsh to grant such recovery.

(*Id.* at 123).  Further, the 3rd Circuit has held that in the absence of proof of any damage to plaintiff or profit by the infringer precludes an award of damages particularly in view of the

37

statutory intent to compensate rather than penalize.  *Caesars World, Inc. v. Venus Lounge, Inc.,* 520 F.2d 269 (3rd Cir. 1975).  Further, courts have held that an accounting will not be ordered merely upon a showing of infringement, since, under the Lanham Act, accounting may be denied where injunction will satisfy the equities of the case.  *Laskowitz v. Marie Designer, Inc.,* 119 F.Supp. 541 (S.D. Cal. 1973).  The Court finds that although Defendant's infringement was willful, statutory damages are not appropriate in this matter.  Defendant alleges that he has not made a profit from www.audisport.com.  Under these circumstances, the Court finds that an injunction satisfies the equity of this case.[7]

   As one Court has provided:

> [i]njunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.  It is the remedy provided by federal and state trademark infringement statutes.

*Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1180 (9th Cir. 1988).  Accordingly, the Court grants Plaintiffs' request for a permanent injunction as follows:

> Defendant, and its employees, agents, successors and assigns, and all those in active concert and participation with them and each of them who received notice directly or otherwise of such injunctions, shall be permanently enjoined from:

> 1.    imitating, copying, or making unauthorized use of any of the Audi Trademarks or trade dress;

> 2.    importing, manufacturing, producing, distributing, circulating, selling, offering

---

[7]The Court rejects Defendant's argument that Plaintiffs are not entitled to injunctive relief under the ACPA because he registered www.audisport.com before it was enacted.  The Court notes that the ACPA allows injunctive relief irrespective of whether the website in question was registered before its enactment.  (15 U.S.C. §1116).  Section 1117 of the ACPA provides that the ACPA applies to all domain names registered before, on, or after the date of enactment of the ACPA, but actual and statutory damages are not available for domain names registered before the enactment of the ACPA.  (15 U.S.C. §1117).

for sale, advertising, promoting or displaying any service or product using any simulation, reproduction, counterfeit, copy, or colorable imitation of any or all of the Audi Trademarks or trade dress;

3.    using any simulation, reproduction, counterfeit, copy or colorable imitation of the Audi Trademarks or trade dress in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any service or product;

4.    using any false designation of origin or false description (including without limitation, any letters or symbols constitution the Audi Trademarks, or performing any act, which can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed or sold by Defendant is in any manner associated or connected with Audi or the Audi Trademarks, or is sold, manufactured, licensed, sponsored, approved or authorized by Audi;

5.    transferring, consigning, selling, shipping or otherwise moving any goods, packaging or other materials in Defendant's possession, custody or control bearing a design or mark substantially identical to any or all of the Audi Trademarks or trade dress;

6.    engaging in any other activity constituting unfair competition with Audi with respect to the Audi Trademarks, or of Audi's rights in, or to use or exploit, any or all of the Audi Trademarks; and

7.    instructing, assisting, aiding or abetting any other person or business entity in engaging in or performance any of the activities referred to in paragraphs 1. through 6. above.

Further, under Plaintiffs' claims for Cyberpiracy, Defendant shall be permanently

enjoined as follows:

1.    Defendant is enjoined from transferring to anyone other than Audi the domain name www.audisport.com or any other domain names that use words, designations, or other symbols confusingly similar to the Audi Trademarks;

2.    Defendant is enjoined from registering, maintaining registrations for, using, offering for sale, claiming ownership of, or in any other way using the domain name www.audisport.com or any other domain names that use names, words, designations, or other symbols confusingly similar to the Audi Trademarks;

3.    Defendant is ordered to disclose to the Court and to Audi all other domain name

registrations directly or indirectly owned or registered by Defendant in order to permit the Court and Audi to consider whether any such other registration, if any, should be transferred to Audi or be subject to other relief in this matter;

4.    Defendant is ordered to transfer to Audi the registrations for the domain name www.audisport.com and any other domain names that use names, words, designations, or other symbols confusingly similar to the Audi Trademarks; and

5.    Defendant is ordered to deliver for destruction all products, labels, tags, signs, prints, packages, videos, and advertisements in their possession or under their control, bearing or using any or all of the Audi Trademarks or any simulation, reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of making the same, pursuant to 15 U.S.C. §1118; and

6.    Plaintiffs are awarded their costs and disbursements incurred in this action, including Plaintiffs' reasonable attorneys fees.

As noted, the Court awards Plaintiffs' attorney fees under 15 U.S.C. §1117(a). Under section 1117(a), a district court may award reasonable attorney fees to the prevailing party in "exceptional" cases. The term "exceptional" is not defined in the section 1117(a), although the Sixth Circuit provides that "a case is not exceptional unless 'the infringement was malicious, fraudulent, willful, or deliberate." *Eagles, LTD v. American Eagle Foundation,* 356 F.3d 724, 728 (6th Cir. 2004) (quoting *Hindu Incense v. Meadows,* 692 F.2d 1048, 1051 (6th Cir. 1982). Based upon Defendant's willful conduct and his continued infringing use of www.audisport.com, the Court finds that this is an "exceptional case" warranting attorney's fees and costs to Plaintiffs.

**CONCLUSION:**

The Court grants Plaintiffs' Motion for Summary Judgment on all counts, and dismisses Defendant's counterclaims. The Court denies Plaintiffs' request for statutory damages, but grants its request for a permanent injunction and attorney fees.

40

**SO ORDERED.**


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  August 4, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on August 4, 2005.


s/Jonie Parker
Case Manager

41